Jose PEREZ, Petitioner,

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 9, 1999.

Decided Aug. 9, 1999.

Timothy D. McNair, Erie, for petitioner.

Daniel M. Miller, Erie, for intervenor, Erie Strayer Co.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Jose Perez (Claimant) appeals from a decision of the Unemployment Compensation Board of Review (Board) finding that his conduct in pushing a co-worker who had deliberately provoked him at the command of their immediate supervisor constituted willful misconduct under Section 402(e) of the Unemployment Compensation Law (Law).[1]

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S.

Claimant worked for seven years at Erie Strayer Company (Employer) as a welder making steel mixing bins for concrete. On September 17, 1998, Claimant was welding inside of a large steel mixing bin when James Wolfgang (Wolfgang), a co-worker, began to hit the outside roof of the bin with a hammer, creating loud noises inside the bin. In response to these actions, Claimant confronted Wolfgang on top of the bin and after an exchange of words, pushed him. Wolfgang immediately notified their supervisor of the altercation. Purportedly, because Claimant had not notified a supervisor or management of the problem but instead had pushed Wolfgang in violation of Employer's policy prohibiting fighting or disorderly conduct in the plant,[2] Employer fired Claimant that day. Claimant filed for unemployment compensation benefits with the Erie Job Center alleging that his actions did not constitute willful misconduct because he had been provoked by Wolfgang at the direction of their immediate supervisor, Daniel Lanagan (Supervisor Lanagan), who did not like Claimant because he was Hispanic. When the Job Center denied benefits, Claimant petitioned for a hearing before a Referee to challenge that determination.

At the hearing before the Referee, in order to establish Claimant's willful misconduct, Employer presented the testimony of Wolfgang concerning the events involving the incident. Wolfgang testified that on the day of the altercation, he and Claimant argued about who would be responsible for welding the inner area of the steel bin and Claimant acquiesced to working inside the bin. Once Claimant was inside the bin, Wolfgang stated that he purposely began to bang on the outside roof of the bin with a hammer to create a deafening noise within the steel chamber which would anger Claimant. He testified that Claimant then left the bin and they began to verbally threaten each other. Wolfgang stated that after Claimant lightly pushed him from a squatting position onto his backside, causing pain for "several minutes" but no lasting injuries, he told Claimant that he was going to be fired. Wolfgang concluded by stating that he immediately notified Supervisor Lanagan of the altercation and Claimant was discharged that same day.

On cross-examination, Wolfgang explained the motivation behind his actions against Claimant. He stated that he was told to instigate a fight with Claimant by their immediate supervisor, Supervisor Lanagan, who had begun a campaign to have Claimant fired in the fall of 1998 because he was Hispanic. Wolfgang testified that Supervisor Lanagan had previously selectively disciplined Claimant by suspending him from work for five days for exiting the wrong plant door while other non-Hispanic employees who did the same escaped discipline. As to this incident, Wolfgang testified that Supervisor Lanagan commanded him to deliberately provoke Claimant until he had violated the prohibition against fighting and disorderly conduct so that Claimant could be fired. Specifically, in response to being asked whether he provoked Claimant at the request of any employee of Employer, he responded:[3]

A. Yes.

Q. Who requested you to aggravate Mr. Perez?

A. Dan Lanagan.

§ 802(e). Section 402(e) of the Law provides in pertinent part:
   An employee shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]

2. Employer's Company Rule 21 stated that "[f]ighting or disorderly conduct is prohibit-

ed." A violation of this rule required termination of the employee. Upon being hired, Claimant received a policy booklet containing this rule and the rule was publicly posted in Employer's plant.

3. This testimony was edited to delete objections made by Employer's counsel.

Q. Did Mr. Lanagan tell you why he wanted you to aggravate Mr. Perez, or what he thought the result should be?

A. He told me to aggravate him until he snapped or popped or whatever. That will get him fired.

Q. Okay, and that was Mr. Lanagan's intention in instructing you to engage in these activities with Mr. Perez?

A. Yes.

* * *

Q. Mr. Wolfgang, if I understand your testimony correctly, Mr. Lanagan wanted you to provoke Mr. Perez to the point where he lost his temper, so that he could be fired is that a fair statement?

A. Yes.

* * *

Q. Had Mr. Lanagan ever referred to Jose as a dumb Puerto Rican?

A. Yes.

Q. Had Mr. Lanagan ever made statements that Jose should never have come over here on the banana boat?

A. Yes.

* * *

Q. Did Mr. Lanagan treat Jose differently from other non-Hispanic employees?

A. Yes.

* * *

Q. Do you know whether Mr. Lanagan subjected Mr. Perez to a written warning, without first giving him a verbal warning as required by the company rules? Regarding an incident where Mr. Perez allegedly left the plant by the wrong door?

A. I believe the warning came from – he never got a verbal warning.

* * *

Q. I appreciate that. Were other employees, non-Hispanic employees subjected to discipline for exiting the plant through the wrong door?

A. No.

Q. Was Jose subjected to discipline for that infraction?

A. Yes.

Q. Was he assigned three points for that infraction?

A. He was given five points and suspended for five days.

Q. To your knowledge, and you are union steward correct?

A. That is correct.

Q. You are involved in most, if not all disciplinary matters that occur on the weld shop floor, correct?

A. Yes.

Q. In your experience as a union steward on the weld shop floor at Erie Strayer, has any other employee been suspended or punished for exiting from the wrong door?

* * *

A. No.

Q. Do other employees, other than Mr. Perez ever exit the plant from the company says is the wrong door?

A. Yes.

Q. Is Mr. Lanagan aware of these occurrences?

A. Yes.

Q. Did Mr. Lanagan threaten or intimidate you or offer you anything of benefit or value to secure your cooperation in attempting to provoke Mr. Perez into an outburst that would result in his termination?

A. Yes.

Q. What did he threaten you with?

A. My job and my life, my family outside the workplace.

Q. Have you been treated differently since Mr. Perez has not been at Erie Strayer?

A. Yes.

Q. How is that?

A. I have a job, I don't have to work very much.

(Notes of Testimony, pp. 10–14.)

Employer also offered the testimony of Supervisor Lanagan who testified that he had never asked Wolfgang to provoke Claimant and that Wolfgang was a "liar." He also stated that he had never threatened Wolfgang's position or home life if he did not follow an order to provoke Claimant. He further testified that he had never discriminated against Claimant or used derogatory language about his Hispanic heritage. As to the incident concerning Claimant's exiting of the wrong door, Supervisor Lanagan stated that he had not selectively disciplined Claimant and that he was unaware of any other employees using that door.

Claimant then testified to the events surrounding the incident. He testified that while he was welding the inside of the steel bin, he heard several loud banging noises right above his head, which made him apprehensive that the steel bin was going to fall off of the cement blocks on which it was standing. He stated that he took off his helmet causing some steel pieces that were dislodged by the banging to fall into his eyes, exited the steel bin, and discovered that there was nothing on the top of the bin which required the banging. He continued stating that he became upset and questioned Wolfgang about why he was banging on the steel bin, to which Wolfgang responded that he could "kick his ass" and that Claimant should "come up." Claimant testified that he then ascended the ladder to the top of the bin where Wolfgang was located and lightly pushed Wolfgang with both hands, but that he did not intend to fight because as a 230–pound man, he could have easily caused Wolfgang injury by punching him instead. He stated that Wolfgang responded to this push by looking around to see if anyone had witnessed the exchange and then stated "that's it buddy, you are fired."

Finding that Claimant's supervisor had acted to purposely provoke Claimant until he committed an act requiring his discharge, the Referee granted benefits because Claimant's actions did not constitute willful misconduct as they were justified by the provocation. Employer appealed to the Board. The Board made the following findings of facts:

1. The claimant was last employed as a welder-grader 6 by Erie Strayer Company at $12.22 per hour from February 25, 1991 which his last day of work being September 17, 1998.

2. Previously, the claimant a Hispanic was the only person to be provided a written warning, five points per the disciplinary procedure, and three day suspension for exiting the work site through door number five.

3. Other non-Hispanic fellow employees exited door number five without consequence.

4. Shop rule number 21, of which the claimant was aware, prohibits fighting or disorderly conduct.

5. The claimant's supervisor had previously told the claimant's fellow employee to aggravate the claimant so as to cause an incident for which the claimant could be discharged.

6. The claimant's supervisor did not like the claimant because he was Hispanic.

7. The claimant was working inside of a metal bin.

8. The fellow employee provoked the claimant by pounding on top of a metal bin within which the claimant was welding so as to get the claimant angry.

9. The claimant climbed a ladder and confronted the fellow employee who was pounding on the bin.

10. The claimant confronted the fellow employee who was pounding on the metal bin and who had provoked him in order to question that fellow employee as to why the fellow employee acted in the manner in which he did and, with open hands, kind of pushed the fellow employee.

11. The claimant did not punch or otherwise assault the fellow employee in question.

12. The fellow employee was not physically harmed by the action of the claimant.

13. The employer discharged the claimant for violation of shop rule number 21 that prohibits fighting and or disorderly conduct.

Based on those findings, the Board initially affirmed the Referee and awarded benefits. However, as a result of Employer's request for reconsideration but based on the same findings, the Board later reversed. It held that Claimant's actions constituted willful misconduct because regardless of whether Claimant was provoked, he should not have physically assaulted a co-worker in violation of Employer's policy, but instead should have retreated. This appeal followed.[4]

■ The issue here is whether Claimant's conduct in pushing a fellow employee amounted to "willful misconduct" when it was deliberately provoked by the systematic plan of his immediate supervisor to harass Claimant until he finally broke a rule punishable by termination.[5] While normally a deliberate violation of an employer's reasonable rule against fighting and disorderly conduct is willful misconduct, and such conduct is not excused if the confrontation can be avoided, *Perez v. Unemployment Compensation Board of Review*, 58 Pa.Cmwlth. 282, 427 A.2d 763 (1981) (avoidable fighting between co-workers caused by discriminatory comments concerning employee's Hispanic heritage constituted willful misconduct), the assumption behind those rubrics is that the altercation involves two employees having a workplace dispute—not that a purposeful attack is made at the behest of a supervisor to provoke an employee into engaging in conduct that would lead to his violation of the work rule so that he ultimately can be fired.

■ In *Kowal v. Unemployment Compensation Board of Review*, 99 Pa.Cmwlth. 234, 512 A.2d 812 (1986), we held that an employer, just like an employee, has to live up to a certain standard of conduct, and that the employer's actions precipitating or provoking the conduct of an employee will not be disregarded in determining whether the employee's conduct constitutes willful misconduct. In that case, a claimant was singled out by her supervisor during a

---

4. Our scope of review in an unemployment compensation case is limited to a determination of whether the findings of fact were supported by substantial evidence in the record, whether an error of law was committed or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Stanley Flagg & Co., Inc., v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 248, 605 A.2d 443, *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

5. While there is no statutory definition of "willful misconduct" under Section 402(e), courts have defined it as behavior evidencing wanton and willful disregard of an employer's interest, the deliberate violation of employer's rules, the disregard of standards of behavior which the employer can rightfully expect

from its employees, negligence which manifests culpability, wrongful intent, evil design, or intentional disregard for the employer's interests or the employer's duties and obligations. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 550 Pa. 115, 703 A.2d 452 (1997). Willful misconduct is not found where a claimant can show good cause for his actions, i.e., that the actions which resulted in the discharge were justifiable and reasonable under the circumstances. *Williams v. Unemployment Compensation Board of Review*, 167 Pa.Cmwlth. 656, 648 A.2d 1321 (1994). While the employer bears the burden of proving that a claimant's behavior constitutes willful misconduct, *Broadus v. Unemployment Compensation Board of Review*, 721 A.2d 70 (Pa.Cmwlth.1998), it is the claimant who bears the burden of proving his conduct was justified. *Williams*.

highly charged 45–minute disciplinary meeting and yelled at continually concerning whether she liked her job, until she finally reacted to the harassment by throwing a writing tablet at the supervisor and telling him, "I hate working here. Shove it up your ass." She was then fired for her outburst. Because the supervisor's targeting of claimant for individualized aggression constituted a justification for her conduct, we held that the claimant's actions did not amount to willful misconduct.[6] In the present case, Employer's supervisor's conduct was much more egregious than that found in *Kowal.* Unlike in *Kowal,* where the actions of the supervisor could have stemmed from the heat of the moment, Supervisor Lanagan here engaged in a systematic plan to have Claimant discharged because he was Hispanic. While antagonistic physical contact in the workplace, including the minor contact which occurred here, should not be condoned, neither should the conduct of a supervisor who intentionally provokes an employee to take actions necessitating his discharge, no matter what the reason. Because Supervisor Lanagan deliberately set out to have Wolfgang provoke Claimant's actions, Claimant's pushing of Wolfgang is excusable.

Accordingly, because Employer did not live up to the standards of conduct that employees have a right to expect from their employers, the order of the Board denying claimant's unemployment compensation benefits is reversed.

### ORDER

AND NOW, this 9th day of August, 1999, the order of the Unemployment Compensation Board of Review dated March 9, 1999, is reversed.

---

**6.** *See also Horace W. Longacre, Inc. v. Unemployment Compensation Board of Review,* 12 Pa.Cmwlth. 176, 316 A.2d 110 (1974) (shouting obscenities after being grabbed by foreman did not constitute willful misconduct where action found justifiable because of supervisor's provocation).