**Donald C. WALSH, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 11, 2008.
Decided Feb. 20, 2008.

Kathryn V. Chandless, Newtown Square, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Audrey Feinman Miner, Asst. Counsel-in Charge and Andrew S. Gordon, Chief Counsel, Harrisburg, for intervenor, Pennsylvania Department of Transportation.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Donald C. Walsh (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming the Referee's decision denying his claim for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm.

Claimant was employed by the Pennsylvania Department of Transportation (Employer), Bureau of Driver Licensing, as a full time driver license manager until the date of his suspension on March 27, 2007. Claimant filed a claim for unemployment compensation benefits with the Scranton UC Service Center (Center). By determination mailed April 19, 2007, the Service Center denied Claimant's application for benefits pursuant to Section 402(e) of the Law. The Service Center determined that Employer had shown that Claimant violated a reasonable work rule permitting employees to access information only when necessary to accomplish his or her responsibilities of employment. The Service Center determined further that Claimant was aware of Employer's rule and that Claimant did not show good cause for violating the rule.

Claimant appealed the Service Center's determination and hearing was held before the Referee at which Claimant, *pro se,* and Employer appeared and presented testimony. Prior to the hearing, Claimant submitted two separate requests to the Referee requesting that subpoenas be issued for six of Employer's current employees who were disciplined for violating the same work rule for the purpose of showing inconsistencies in the manner of disciplinary action taken by Employer. The Referee denied both requests and noted the same on the record at the May 14, 2007 hearing.

Based upon the evidence presented at the hearing, the Referee found as follows. Employer maintains driver license and vehicle registration records that include confidential and personal information relative

---

**1.** Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). Section 402(e) provides in pertinent part:

An employe shall be ineligible for compensation for any week—

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in the act.

to Pennsylvania drivers and registered vehicles. Employer suspended Claimant on March 27, 2007, and discharged him on May 8, 2007, for violating Employer's Record Information Confidentiality policy, which prohibits unauthorized access, use, or disclosure of confidential and personal information that is maintained in Employer's driver license and vehicle registration records.

Employer provided the written Record Information Confidentiality policy to its employees including Claimant.[2] Claimant was aware at all times relevant to his appeal of the denial of his claim for benefits of Employer's expectations and prohibitions concerning access, use and disclosure of Employer's records. As a manager, Claimant's job duties included not only access, use and disclosure of

Employer's records consistent with the Record Information Confidentiality policy, but also enforcing the policy.

On March 16, 2006 and March 30, 2006, Claimant accessed driver and vehicle records for personal reasons, unrelated to any legitimate work-related purpose. The records Claimant accessed on March 16th and 30th, pertained to an individual who apparently was romantically involved with Claimant's estranged wife. For personal reasons, unrelated to any legitimate work-related purpose, Claimant printed the record he accessed on March 30, 2006, and brought the printed record home to his residence. Claimant violated Employer's Record Information Confidentiality policy without good cause.

On March 13, 2007, Claimant's wife, and the individual who was the subject of the

---

2. Prior to the events that resulted in his discharge, Claimant on multiple occasions completed a signed acknowledgement of Employer's Record Information Confidentiality policy wherein Claimant agreed, in relevant part, as follows:

1. As an employee, I may access information only when necessary to accomplish the responsibilities of my employment. I may help my co-workers' family and friends directly ONLY if the transaction is part of my assigned job responsibilities. I may not access or use information from PENNDOT for personal reasons or to assist my family or friends. I will ask another unit that processes that type of transaction to assist my relative or friend. I will not access the record and/or help the family member or friend myself. (Examples of inappropriate use, access of misuse of PENNDOT information include, but are not limited to: accessing and processing work on any records in my name, making personal inquiries or processing unauthorized transactions on the record of my friends or relatives; accessing and providing record information to a co-worker so that the co-worker can assist his/her family; accessing information about another person, including locating their residence, for any reason such as sending birthday cards, determining the age of the record holder, just being curious or any other rea-

sons that is not related to my job responsibilities.)

2. I may disclose PENNDOT information *only* to individuals who have been authorized to receive it. Requestors of information must complete the appropriate forms, submit them to PENNDOT, and pay all applicable fees. In the case of confidential or personal information, a proper accounting of all disclosures is made, and the subject is notified in accordance with statute and PENNDOT directives. (Examples of unauthorized disclosure include, but are not limited to: telling someone the address of another person when it is not an authorized disclosure or part of my job responsibilities.)

3. * * * *

4. I understand that any residence address or driver history, in any record obtained from PENNDOT is confidential information.

5. * * * *

**I have read and understand the PENNDOT Record Information Confidentiality policy stated above and agree to abide by the requirements set forth therein. I understand that disciplinary action, up to and including termination, may be taken if I fail to abide by any of the requirements of this policy.**

Certified Record (C.R.), Employer Exhibit 1.

record Claimant accessed and printed on March 30, 2006, reported to Employer that Claimant's wife had found the March 30, 2006 record printout in her home. On the basis of this information, Employer initiated an investigation and began Civil Service disciplinary proceedings resulting in Claimant's suspension effective March 27, 2007 and termination of Claimant's employment effective May 8, 2007. The delay between Claimant's violation of Employer's Record Information Confidentiality policy and discipline for the violation was caused by Employer's late discovery of the violation and the Employer's compliance with the internal disciplinary procedures required by law.

Other employees have violated Employer's Record Information Confidentiality policy and have not been discharged. All other employees known to Employer to have violated the policy were at least suspended by Employer. Claimant was aware at all times relevant to his appeal that all other employees known to Employer who violated the policy were suspended. Claimant was aware at all times relevant to his appeal that his actions were specifically prohibited by Employer, would result in suspension, and could result in suspension pending discharge.

Claimant was not similarly situated to those employees who were suspended but not discharged, as the nature of his violation was different. The employees who were suspended, but not discharged for violating Employer's Record Information Confidentiality policy, had accessed records for individuals with their consent and knowledge. The individual whose records Claimant accessed, printed and took home from work did not consent to Claimant

doing so and had no knowledge at the time of Claimant's actions. The employees who were suspended but not discharged for violating Employer's Record Information Confidentiality policy had not printed and removed from work the records they accessed in violation of the policy.

Employer had a legitimate work-related reason, tailored to the nature of Claimant's policy violation for suspending Claimant pending discharge and ultimately discharging him rather than suspending him and reinstating his employment, and did not treat Claimant differently than others upon any improper criteria. Specifically, Employer suspended Claimant pending discharge and discharged him because: (a) Claimant violated the policy without the subject individual's consent or knowledge, whereas others did so with the knowledge and consent of the individuals whose records they accessed; (b) the others who violated the policy did not, as Claimant, print the records and remove the printed records from work; and (c) Claimant was a manager charged with enforcing the policy and setting the example of compliance for his subordinates.

Based on the foregoing, the Referee affirmed the Service Center's determination and denied Claimant's claim for benefits. The Referee sustained Claimant's hearsay objections to the written statements of Claimant's wife and the subject individual submitted into evidence by Employer as to the truth of the content of what the wife and the subject individual reported to Employer. The Referee admitted their written statements only as competent evidence to show that a report was made to Employer not to show that what was reported was actually true.[3]

---

**3.** The Referee stated further that it was unclear whether the home in which the wife purportedly found the record was at that time or ever had been Claimant's home, i.e., the

home to which Claimant took the record after printing it or some other residence. The Referee stated that, in any event, neither the wife's written statement nor that of the sub-

Claimant appealed the Referee's decision to the Board. In addition to his appeal, Claimant submitted a request for a remand hearing alleging that the evidence of record was insufficient for a proper determination. Claimant requested that a remand hearing be held, following the issuance of subpoenas that he had previously requested, to enable him, with the assistance of counsel, to admit into the record relevant, competent, material evidence establishing his eligibility for benefits.

The Board affirmed and adopted and incorporated the Referee's findings and conclusions without making any independent findings of fact or conclusions of law. The Board also denied Claimant's request that the record be remanded for additional testimony on the basis that the evidence that Claimant sought to produce via subpoenaed witnesses was undisputed in that Employer acknowledged that the individuals in question were disciplined differently and adequately explained the reasons why. This appeal followed.[4]

Herein, Claimant argues that the Board's decision should be reversed because it is based on errors of fact and law and not supported by substantial evidence as Employer failed to prove that Claimant was discharged for willful misconduct. Claimant further argues that, in the alternative, a remand hearing should be ordered to allow Claimant to introduce relevant evidence that the Referee improperly refused to subpoena in support of his claims.

■ Initially, we note that this Court's review of the Board's decision is set forth in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, which provides that the Court shall affirm unless it determines that the adjudication is in violation of the claimant's constitutional rights, that it is not in accordance with law, that provisions relating to practice and procedure of the Board have been violated, or that any necessary findings of fact are not supported by substantial evidence. *See Porco v. Unemployment Compensation Board of Review*, 828 A.2d 426 (Pa.Cmwlth.2003). Findings of fact are conclusive upon review provided that the record, taken as a whole, contains substantial evidence to support the findings. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992). The Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

■ Whether an employee's conduct constituted willful misconduct is a matter of law subject to this court's review. *Miller v. Unemployment Compensation Board of Review*, 45 Pa.Cmwlth. 539, 405 A.2d 1034 (1979). The burden of proving willful misconduct rests with the employer. *Brant v. Unemployment Compensation*

---

ject individual were used by the Referee to find that the wife did in fact find the record, in the manner and at the location reported to Employer, or otherwise, and further, for the purposes of Claimant's appeal, it was immaterial whether, where and under what circumstances anyone found the record.

4. By notice filed August 22, 2007, Employer intervened in this matter and has filed a brief in support of the Board's order.

*Board of Review,* 83 Pa.Cmwlth. 373, 477 A.2d 596 (1984).

■ Willful misconduct has been judicially defined as that misconduct which must evidence the wanton and willful disregard of employer's interest, the deliberate violation of rules, the disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional substantial disregard for the employer's interest, or the employee's duties and obligations. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976). In order to prove willful misconduct by showing a violation of employer rules or policies, the employer must prove the existence of the rule or policy and that it was violated. *Caterpillar, Inc. v. Unemployment Compensation Board of Review,* 654 A.2d 199 (Pa. Cmwlth.1995); *Duquesne Light Company v. Unemployment Compensation Board of Review,* 167 Pa.Cmwlth. 650, 648 A.2d 1318 (1994).

■■ Willful misconduct is not found where a claimant can show good cause for his actions, i.e., that the actions which resulted in the discharge were justifiable and reasonable under the circumstances. *Perez v. Unemployment Compensation Board of Review,* 736 A.2d 737 (Pa.Cmwlth.1999). While the employer bears the burden of proving that a claimant's behavior constitutes willful misconduct, it is the claimant who bears of the burden of proving good cause for his actions. *Id.*

Claimant first argues that the denial of benefits was not based on competent evidence. Claimant contends that the Referee erred in admitting the written statements of Claimant's wife and the subject individual as the statements were hearsay. Claimant argues that the Referee's findings show that he relied upon the truth of the content of the foregoing statements; in particular, the finding that Claimant accessed information for personal reasons without the subject individual's consent or knowledge and took such information home where it was then found by his wife. Claimant contends that all of these findings are based solely on the content of the witness statements of which no Employer witness had personal knowledge. Claimant argues that discounting this hearsay evidence, Employer could not prove that Claimant committed any violation of the Record Information Confidentiality policy warranting his discharge let alone warranting a denial of unemployment compensation benefits. Claimant argues further that the factual findings regarding numerous other employees not discharged for violating the Record Information Confidentiality policy, and the conclusion the Claimant was not similarly situated to those employees because the nature of his violation was different, are also based on uncorroborated hearsay testimony, not Employer's first hand knowledge.

■ In the present case, Claimant does not challenge the Referee's findings that Employer established through competent evidence that it had promulgated a Record Information Confidentiality policy, that said policy was reasonable, and that Claimant was aware of the policy. With respect to the Referee's finding, as adopted by the Board, that Claimant violated the Record Information Confidentiality policy, the transcript of the hearing before the Referee reveals that Claimant admitted that he made a printout of the subject individual's driver license record. *See* C.R., Transcript of May 14, 2007 at 31. Therefore, despite Claimant's argument that the challenged witness statements are hearsay, there is substantial competent evidence to support the finding that Claimant violated Employer's Record Information Confiden-

tiality policy. Accordingly, it is irrelevant whether the Referee erred in admitting and relying on the challenged witness statements.

We also reject Claimant's contention that the factual findings, regarding numerous other employees not discharged for violating the Record Information Confidentiality policy and the conclusion the Claimant was not similarly situated to those employees because the nature of his violation was different, are based on uncorroborated hearsay testimony. We first point out that Claimant did not set forth a hearsay objection to the testimony of Employer's witnesses on this issue. Moreover, the transcript reveals that Employer's witness did have first hand knowledge of the disciplinary proceedings which occurred with respect to the employees listed on Claimant's request for subpoenas and submitted to the Referee. Employer's witness testified that he was familiar with all the employees on Claimant's subpoena list, the discipline received by each, and the reasons why each received only a suspension. C.R., Transcript of May 14, 2007 at 32. As such, we reject Claimant's contention that the findings regarding the discipline of other employees who violated Employer's Record Information Confidentiality policy are based upon uncorroborated hearsay.

Next, Claimant argues that his single policy violation falls short of what constitutes willful misconduct. Claimant argues that he did not act affirmatively and intentionally to convey prohibited information to third persons not authorized to receive such information as did two employees who were terminated in 2004 and 2005 for violating Employer's policy for disseminating confidential information.

■ This argument by Claimant misses the point. As stated previously herein, Employer established that it had promul-

gated a confidentially policy, that it was reasonable and that Claimant was aware of the same. Claimant admitted that he violated Employer's Record Information Confidentiality policy by printing out the subject individual's information.

Moreover, Claimant did not offer good cause for his actions. Claimant's only defense before the Referee was that he should not have been discharged for his conduct because other employees who had also violated the policy were only suspended. To succeed on his defense, Claimant was required to establish that Employer treated similarly situated employees differently based upon improper criteria. *See Glenn v. Unemployment Compensation Board of Review*, 928 A.2d 1169, 1173 (Pa. Cmwlth.2007) (The essence of disparate treatment is not only whether unlawful discrimination has occurred but also whether similarly situated people are treated differently, based upon improper criteria.). While the record shows that other employees who were disciplined under Employer's policy during were only suspended and not discharged, the record shows further that Employer presented evidence that those employees had improperly accessed their own records or records of individuals with the knowledge and consent of those individuals. In addition, the employees who were only suspended did not print out or remove the records from Employer's premises. Accordingly, the Board properly rejected Claimant's defense and found that Employer adequately demonstrated proper criteria for discharging rather than suspending Claimant for his actions.

Next, Claimant argues in support of his appeal that Employer failed to offer any coherent or credible explanation for why Claimant's alleged infractions led to a forty-three day suspension and ultimately to his discharge. We disagree.

Herein, Employer's witness testified that during the time period between Claimant's suspension on March 27, 2007 and his discharge on May 8, 2007, Employer continued to investigate Claimant's violation of its policy in order to ascertain if there were other violations by Claimant of which Employer was not aware. The Board accepted this testimony as fact. It is well settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak.* Accordingly, we reject Claimant's contention that Employer failed to offer any coherent or credible explanation for the forty-three day time period between Claimant's suspension and his discharge.

Next, Claimant argues that the Referee and the Board improperly denied his requests for subpoenas as such denial precluded him from obtaining and introducing relevant, competent and material evidence. Claimant contends that a material dispute existed concerning the facts that such evidence would address including whether certain individuals who received less harsh discipline for violating the same policy were similarly situated to Claimant.

■ Pursuant to Section 506 of the Law, 43 P.S. § 826, the Referee and the Board are empowered to issue subpoenas "to compel the attendance of witnesses and the production of ... [documents] deemed necessary as evidence in connection with a disputed claim." The Board's regulations at 34 Pa.Code § 101.31 state that "the issuance of subpoenas to compel the attendance of witnesses ... may be obtained on application to the Board, referee, or at any local employment office." Thus, it is clear that issuance of a subpoena is a matter of discretion. *See Flores v. Unemployment Compensation Board of Review,* 686 A.2d 66, 77 (Pa.Cmwlth.1996).

■ In the present matter, we conclude that there was no error in the denial of Claimant's request to issue subpoenas to six of Employer's employees who were suspended but not discharged as a result of a violation of Employer's Record Information Confidentiality policy. During the hearing, the Referee questioned Claimant and Employer regarding the employees that Claimant wished to have subpoenaed. Claimant explained on the record that he knew that four of the employees listed on his subpoena request had been disciplined differently than he for violating Employer's policy because three of the employees were under his supervision and one was a fellow manager. *See* C.R., Transcript of May 14, 2007 at 29.

Employer's witness testified that he was familiar with the individuals listed on Claimant's subpoena request and that all but one had received a suspension. *Id.* at 32. Employer's witness did not believe that the remaining individual had received any discipline for a violation of Employer's policy. *Id.* Employer's witness testified further that the individuals who received a suspension either accessed their own records or the records of a friend or family member with that person's consent. *Id.* at 35–36. Thus, Employer acknowledged that those employees had been disciplined differently than Claimant and adequately explained, without the necessity to subpoena each employee listed on Claimant's subpoena request, why those individuals received discipline that was less harsh than what was imposed upon Claimant. Accordingly, we conclude that the Referee did not err by denying Claimant's subpoena request and further that the Board did not err by denying Claimant's request for a remand.

The Board's order is affirmed.

## *ORDER*

AND NOW, this 20th day of February, 2008, the order of the Unemployment Compensation Board of Review in the above captioned matter is affirmed.