IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reading School District,          :
                    Petitioner    :
                                  :
        v.                        :    No. 1644 C.D. 2019
                                  :    Submitted: August 19, 2022
Unemployment Compensation         :
Board of Review,                  :
                    Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                              FILED: January 20, 2023

Reading School District (Petitioner) has petitioned this Court to review the adjudication of the Unemployment Compensation Board of Review (Board), which affirmed a Referee's decision that Tsehay A. Jackson (Claimant) was eligible for unemployment compensation under the Unemployment Compensation Law (Law).[1]  Because the Board erred as a matter of law by holding that Claimant was justifiably provoked, we reverse the Board.

## I. BACKGROUND[2]

Claimant was a full-time teacher with Petitioner from 2008 to 2019.  In

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[2] Except as stated otherwise, we adopt this background from the Referee's Decision/Order and the Board's Order, which adopted the Referee's conclusions and added a single finding of fact. *See* Referee's Decision/Order, 7/31/19; Board's (Bd.) Order, 10/30/19.  We add that we review the record in the light most favorable to the prevailing party and give that party the benefit of all logical and reasonable inferences.  *Begovic v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 921, 929 n.6 (Pa. Cmwlth. 2020).

2019, Claimant was at work and "experienced a personal and embarrassing mishap in the restroom between classes." Referee's Decision/Order at 1 (unpaginated). The parties dispute some or all of the following, but the Board found that Claimant was upset and discussing the mishap with two female security guards when the janitor interjected himself into the discussion. *Id.* at 2. A verbal exchange ensued between Claimant and the janitor, with the Board finding that the janitor made a crude remark that resulted in Claimant shoving the janitor. *Id.*; *see also* Notes of Testimony (N.T.) Hr'g, 7/26/19, at 21.[3] A video camera recorded the incident.[4]

As a result of this incident, Petitioner suspended Claimant, pending further investigation. Referee's Decision/Order at 2. While on suspension, Claimant emailed Petitioner from her personal email address, objecting to her suspension and alleging "that she had been told" the janitor bought drugs from a student. *Id.*; *accord* Hr'g Ex. E-5 (reflecting the email, which stated, "I don't deserve to sit for a Loudermill Hearing related to the janitor with whom I had an altercation (who I've been told is buying drugs from a student).").[5]

---

[3] Per Claimant, the janitor said, "I can clean that up. I can clean that up real good with my tongue." N.T. Hr'g, 7/26/19, at 21; *accord* Bd.'s Order at 1.

[4] Although the Board did not address it, the record is undisputed that the janitor lost his balance but remained standing. N.T. Hr'g at 7, 15. Petitioner apparently had the statements of the janitor and other eyewitnesses, but Petitioner elected not to present their statements. *See, e.g.*, *id.* at 4. Finally, the video was not transmitted to this Court as part of the certified record. *See generally* Pa.R.A.P. 1541, 1921.

[5] A *Loudermill* hearing permits a public education employee an opportunity to respond prior to termination. *See Medina v. Harrisburg Sch. Dist.*, 273 A.3d 33, 36 n.4 (Pa. Cmwlth. 2022) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). Petitioner's *Loudermill* Hearing notice stated that it was Claimant who verbally confronted and shoved the janitor. Pet'r's Notice, 4/30/19, at 1. The notice also stated that two security guards, students, and other teachers were present. *Id.* at 1-2; *see also* N.T. Hr'g at 5 (stating that the video depicts an administrator separating Claimant and the janitor). The *Loudermill* hearing transcript was not part of the record. At the unemployment compensation hearing, the parties discussed Claimant's testimony at the *Loudermill* hearing. Claimant acknowledged that at the *Loudermill* hearing, she stated that she

Petitioner charged Claimant with violating Board Policy 417 (Conduct/Disciplinary Procedures), the Employee Handbook (Conduct Standards and Discipline, Workplace Violence, and Whistleblower Protection), and the then-existing versions of Sections 235.4 to .5 of the Code of Professional Practice and Conduct for Educators (Code). Hr'g Ex. E-7; *see also* 22 Pa. Code §§ 235.4-.5 (2020).[6] Essentially, the Board Policy and Employee Handbook prohibit fighting and other acts of violence. Section 235.4 of the Code lists "behaviors and attitudes" by which "professional educators . . . are expected to abide . . . ." 22 Pa. Code § 235.4. Section 235.5 of the Code states that "[i]ndividual professional conduct reflects upon the practices, values, integrity and reputation of the profession." Hr'g Ex. E-8. Petitioner subsequently fired Claimant.

Claimant applied for, but was initially denied, unemployment compensation benefits under Section 402(e) of the Law. Notice of Determination, 6/18/19. Claimant appealed to the Referee, who held a hearing at which only Claimant and Petitioner's compliance officer testified. *See generally* N.T. Hr'g. Petitioner showed the silent video footage of the incident. *Id.* at 5-6.

The Referee ruled in Claimant's favor, finding that Claimant was provoked and had good cause for shoving the janitor. Referee's Decision/Order at 2. The Referee also held that Claimant's email was not willful misconduct. *Id.* Petitioner timely appealed to the Board, which affirmed the Referee and added an additional finding of fact quoting the janitor's crude remark. Bd.'s Order at 1.

---

could not remember what the janitor told her. N.T. Hr'g at 26-27. Claimant justified her statement by explaining that she was "very embarrassed" and humiliated. *Id.* at 27.

[6] Petitioner's notice also charged Claimant with violating 18 Pa.C.S. §§ 2709(a)(1) (harassment), and 4904 (unsworn falsification to authorities), which are *criminal* statutes outside of Petitioner's charging authority. Hr'g Ex. E-7. The record reflects no criminal charges were filed.

3

Petitioner timely filed a petition for review with this Court.

## II. ISSUES[7]

On appeal, Petitioner raises two issues. First, Petitioner claims that the record does not support several of the Board's findings of fact. Pet'r's Br. at 2-4. Specifically, Petitioner claims no record support for the following: the janitor interjected himself into the discussion; the janitor's crude remark; Claimant was upset and shoved the janitor; and the email required Claimant to meet with the janitor at the *Loudermill* hearing. *Id.* Second, Petitioner argues that the Board erred as a matter of law by finding that Claimant's shove of the janitor and email were not acts of willful misconduct. *Id.* at 4-6, 18-19.

## III. DISCUSSION

### A. Challenges to the Findings of Fact

Before summarizing Petitioner's arguments, we state the Referee's findings of fact at issue, which were adopted by the Board. First, Claimant "went to a lobby area and was discussing her issue with two female security guards, when the janitor interjected himself into the discussion. After learning of the problem, the janitor made a crude remark to [Claimant], as if to make light and humiliate [Claimant]." Referee's Decision/Order at 2. Second, Claimant "became upset with the janitor's response and shoved him." *Id.* Third, "[w]hile still on suspension, . . . [C]laimant sent an email to the employer, protesting the fact that she had to participate in a hearing with the janitor with whom she had the confrontation. In this email, . . . [C]laimant indicated that she had been told that this janitor had been

---

[7] We review the Board's decision to determine "whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence." *Frazier v. Unemployment Comp. Bd. of Rev.*, 833 A.2d 1181, 1183 n.4 (Pa. Cmwlth. 2003) (citation omitted). We may also cite unreported opinions as persuasive authority. 210 Pa. Code § 69.414(a).

4

buying drugs from a student." *Id.*

## 1. Arguments

On appeal, Petitioner argues the video establishes that Claimant did *not* speak with the two female guards but directly approached the janitor, where she "berated" the janitor for 13 seconds before shoving him. Pet'r's Br. at 13.[8] Petitioner argues that the Board's finding that the janitor made a crude remark is based solely "upon [Claimant's] unsupported testimony" and that Claimant "provided no evidence or corroborating witnesses." *Id.* at 14. Petitioner reasons that Claimant could have testified as to the janitor's remark at her *Loudermill* hearing. *Id.* at 15. Petitioner opines that Claimant's failure to do so undermines her credibility. *Id.*

With respect to the Board's findings regarding the email, Petitioner argues that the email did not state that Claimant had to meet with the janitor. *Id.* at 16. Petitioner also contends that the Board's conclusion, *i.e.*, Claimant repeated a rumor and did not directly accuse the janitor of buying drugs, is a factual distinction unsupported by the record. *Id.* at 17. Petitioner claims that the Board should have concluded that Claimant "engaged in reckless rumor mongering about a co-worker for the expressed purpose of impugning his character." *Id.* at 18.

## 2. Discussion

We view the record in the light most favorable to the prevailing party, including the benefit of all logical and reasonable inferences, to determine if substantial evidence exists for the Board's conclusion. *Begovic*, 234 A.3d at 929 n.6. "Substantial evidence is such relevant evidence that a reasonable mind might

---

[8] The video, according to Petitioner, also refutes Claimant's testimony that the janitor "made 'gestures'" before Claimant shoved him. Pet'r's Br. at 15. Claimant counters that the video lacks audio and that Petitioner did not call a single witness to contradict Claimant's testimony, including the two guards and the janitor. Claimant's Br. at 9-10.

accept as adequate to support a conclusion." *Woodring v. Unemployment Comp. Bd. of Rev.*, 284 A.3d 960, 964 (Pa. Cmwlth. 2022) (citation omitted). "Substantial evidence" does not necessarily require eyewitness testimony because a factfinder may resolve an unemployment compensation claim based solely on circumstantial evidence. *See Blicha v. Unemployment Comp. Bd. of Rev.*, 876 A.2d 1077, 1082 (Pa. Cmwlth. 2005). As long as substantial evidence supports the Board's findings of fact, it is immaterial that the record could support a contrary finding. *Morgan v. Unemployment Comp. Bd. of Rev.*, 108 A.3d 181, 185 (Pa. Cmwlth. 2015) (*en banc*). In addition to resolving conflicts of evidence, the Board also resolves witness credibility. *Lowman v. Unemployment Comp. Bd. of Rev.*, 235 A.3d 278, 286 n.8 (Pa. 2020); *see generally Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1389 (Pa. 1985) (rejecting argument that Referee should have the exclusive power to resolve credibility). Finally, it is well settled that an unsupported finding of fact that is unnecessary to the adjudication "constitutes harmless error." *Borough of Schuylkill Haven v. Prevailing Wage Appeals Bd.*, 6 A.3d 580, 585 (Pa. Cmwlth. 2010) (*Borough*).

Here, the Board considered the video and testimony of all of the witnesses. *See generally* N.T. Hr'g. Viewing the record, as we must, in Claimant's favor, the video apparently was inconclusive at best as to whether Claimant spoke with the two female guards and whether the janitor made a crude remark to Claimant. *See Woodring*, 284 A.3d at 964. Because the law does not require Claimant to present corroborative testimony or evidence, we disagree with Petitioner's criticism of the Board's reliance on Claimant's testimony alone. *See Blicha*, 876 A.2d at 1082. Finally, with respect to Petitioner's argument that Claimant could have testified about the janitor's statement at the *Loudermill* hearing, such an argument

goes to her credibility, which is left to the Board's discretion. *See Lowman*, 235 A.3d at 286 n.8.

Next, we address whether the record supports the Board's finding that Claimant's email protested that she "had to participate in a hearing with the janitor with whom she had the confrontation." Referee's Decision/Order at 2; *see also* Hr'g Ex. E-5 ("I don't deserve to sit for a Loudermill Hearing related to the janitor with whom I had an altercation . . . ."). Here, viewing the email and all reasonable inferences therefrom in Claimant's favor, Claimant's email could be construed as reflecting her belief that she had to participate in the hearing with the janitor. *See Morgan*, 108 A.3d at 185. But even if the record viewed in Claimant's favor could not support such a finding, Petitioner did not explain how it was reversible error. *See Borough*, 6 A.3d at 585. In other words, even if the Board was incorrect about the email, Petitioner did not explain how the error was material. *See id.* For these reasons, Petitioner's challenges to the Board's findings of fact lack merit.

### B. Justifiable Provocation of the Shove

### 1. Arguments

Petitioner next argues that Claimant's shove was "willful misconduct" precluding unemployment compensation. Pet'r's Br. at 20-22. In Petitioner's view, the janitor's crude remark did not excuse Claimant's act. *Id.* at 23-25. In support, Petitioner contends that it is well settled that offensive or abusive language cannot "justify an assault and battery." *Id.* at 24-25. Petitioner reiterates its argument that the Board's conclusion that Claimant was provoked rests upon uncorroborated testimony. *Id.* at 27-28.

7

## 2. Discussion

It is well established that if the employee engaged in willful misconduct, then the employee is ineligible for unemployment compensation benefits. 43 P.S. § 802(e); *Woodring*, 284 A.3d at 964. Whether an employee's action constitutes willful misconduct is a question of law. *Woodring*, 284 A.3d at 964. "Willful misconduct" is either "(1) an act of wanton or willful disregard of the employer's interest, (2) a deliberate violation of the employer's rules, (3) a disregard for [the] standards of behavior which the employer has a right to expect of an employee, or (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer." *Id.* (cleaned up).[9] If the employer establishes a *prima facie* case of willful misconduct, then the burden of proof shifts to the employee to establish good cause for her actions. *Id.*[10]

Good cause may be found when the employee's "actions are justified

---

[9] An employee's negligent act alone is insufficient to prove willful misconduct. *Rusecky v. Unemployment Comp. Bd. of Rev.*, 236 A.3d 101, 106 (Pa. Cmwlth. 2020). Rather, the employee's negligent act must be "of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]" *Id.* (citation omitted). Further, because standards of behavior vary between employers, what constitutes willful misconduct for one employer may not be willful misconduct for a different employer. *See Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 938 (Pa. Cmwlth. 2012) (stating, "[w]illful misconduct cannot therefore be considered in a vacuum").

[10] "[T]here is a critical distinction between the *employer's* right to terminate employment and the *state's* right to deny benefits." *Blake v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 43, 45 (Pa. Cmwlth. 1981) (emphases added). Thus, an employee's action, which does not rise to the level of willful misconduct for unemployment compensation purposes, may nonetheless justify that employee's termination from employment. *See id.*; *Grace v. Unemployment Comp. Bd. of Rev.*, 412 A.2d 1128, 1129-30 (Pa. Cmwlth. 1980) (explaining that the employee's termination may have been appropriate under the terms of the employer's leave policy, but that the employee was entitled to unemployment compensation because the employee's illness—not an act of willful misconduct—led to the employee violating the leave policy). It is incontrovertible that the Board cannot resolve whether the employer was legally justified in terminating an employee.

8

or reasonable under the circumstances," *i.e.*, the employee was justifiably provoked. *Id.* (cleaned up); *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 948 (Pa. Cmwlth. 2004) (explaining that there must be a "willful disregard of the employer's [interests] or rules or of the standard of conduct which the employer has a right to expect" for willful misconduct). "To determine good cause[,] we must look to the employee's reason for non-compliance" with the employer's rule and, if necessary, "evaluate the reasonableness of the [employer's] request" of the employee, which prompted the employee's non-compliance, "in light of all of the circumstances." *Bell Socialization Servs., Inc. v. Unemployment Comp. Bd. of Rev.*, 74 A.3d 1146, 1147-48 (Pa. Cmwlth. 2013) (*Bell*).

Generally, courts have found an employee is not justifiably provoked when subjected to abusive or personally offensive language. *Sun Oil Co. v. Unemployment Comp. Bd. of Rev.*, 408 A.2d 1169, 1170 (Pa. Cmwlth. 1979) (*Sun Oil*); *Wisniewski v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 254, 255 (Pa. Cmwlth. 1978).[11] For example, in *Wisniewski*, the employee's coworker "began mouthing off" and "called [him] a dirty bastard," which resulted in the employee pushing the coworker "a couple of feet." *Wisniewski*, 383 A.2d at 255. The *Wisniewski* Court rejected the employee's argument that his push was justifiably provoked. *Id.*[12] Even a coworker's "offensive and provocative" references to the

---

[11] Highly offensive language itself is a basis for denying unemployment compensation benefits. *See Andrews v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1261, 1263 (Pa. Cmwlth. 1993) (holding that the employee's statements "were so offensive" as to be "willful misconduct").

[12] Indeed, this Court has affirmed the denial of benefits to an employee notwithstanding an instinctive, automatic physical reaction. For example, this Court categorized an employee's action as retaliatory when, in response to being hit on the head by her coworker, the employee "automatically turned and swung and hit her [coworker] back." *Wolfe v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 1218, 1219 (Pa. Cmwlth. 1981) (affirming the denial of benefits); *accord Muncy Valley Hosp. v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 730 C.D. 2019, filed

9

employee's nationality do not justify the employee fighting the coworker. *John Perez v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 763, 764 (Pa. Cmwlth. 1981) (*John Perez*); *see also Thorne v. Unemployment Comp. Bd. of Rev.*, 76 A.2d 485, 487 (Pa. Super. 1950) (holding that the employee's striking of his supervisor "twice with his open hand" was not excusable even if the supervisor had insulted the employee).[13]

This Court, however, has carved out several exceptions excusing an employee's physical contact that was prompted by another person's verbal remark. First, when an employee is subjected to offensive language accompanied by "threatening gestures" or movement, then we have held the employee was justifiably provoked. For example, in *Sun Oil*, the employee punched his coworker after the coworker "kept reaching for" something in his back pocket, threatened to kill the employee, and insulted the employee with "racial slurs and obscenities." *Sun Oil*, 408 A.2d at 1170. The *Sun Oil* Court held that the employee was justifiably provoked because he had a "reasonable belief of imminent bodily harm and feared danger of an assault," and affirmed the grant of benefits. *Id.* at 1171 (footnote omitted).[14]

In an unpublished opinion, this Court considered analogous facts that also reflect this exception. *See Dep't of Corr. v. Unemployment Comp. Bd. of Rev.*

---

June 10, 2020) (unreported), slip op. at 14, 2020 WL 3072001, at *6 (stating, "the act of hitting a person as an immediate, instinctive reaction to physical provocation can still amount to willful misconduct").

[13] It is undisputed that we may cite Superior Court cases for their persuasive value. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 653 n.20 (Pa. Cmwlth. 2021).

[14] Similarly, this Court held the employee was justifiably provoked when the employee, as a result of his coworker's physical contact, verbally threatened to retaliate if the coworker touched him again. *First Fam. Fed. Sav. & Loan Ass'n v. Unemployment Comp. Bd. of Rev.*, 449 A.2d 870, 872 (Pa. Cmwlth. 1982) (affirming the grant of benefits to the employee).

(Pa. Cmwlth., No. 765 C.D. 2016, filed Apr. 24, 2017) (*DOC*) (unpublished), 2017 WL 1436379. In that case, the employee had an altercation with a halfway house resident. *Id.*, slip op. at 2, 2017 WL 1436379, at *1. The parties disputed the words exchanged, but a video surveillance system recorded the incident, albeit without audio. *Id.* The incident ended with the employee yelling at the resident and pushing the resident to the floor. *Id.* The employee was fired for violating the rule "that only the minimum amount of force necessary to defend oneself or others may be used." *Id.* at 3, 2017 WL 1436379, at *2.

In *DOC*, the employee testified that the resident verbally threatened the employee and his family and that it was only after the resident moved toward the employee that the employee pushed the resident down. *Id.* at 4, 2017 WL 1436379, at *2. The Department of Corrections (Department) argued that the employee's use of force in response to the resident's threat is "never justified." *Id.* The referee watched the video, found the employee's testimony credible, and concluded that the employee reacted with appropriate force. *Id.* at 4-5, 2017 WL 1436379, at *2-3. The Department appealed to the Board, which adopted the referee's findings and affirmed. *Id.* at 2, 2017 WL 1436379, at *1.

The Department appealed to this Court, challenging the Board's findings regarding the resident's verbal statements to the employee. *Id.* at 6-7, 2017 WL 1436379, at *3. In the Department's view, the Board erred by relying solely on the employee's testimony because there were several witnesses who could have corroborated the employee's version of events. *Id.* The *DOC* Court affirmed in favor of the employee, reasoning that the employee had personal knowledge and also apparently accepting the employee's argument that "his testimony need not be corroborated to be admissible in a hearing." *Id.* at 7-8, 2017 WL 1436379, at *4.

11

A second exception occurs when a supervisor has repeatedly and "severely harangued" the employee with intimidating, "loud and aggressive . . . oratory" for 45 minutes about "work attitude." *Kowal v. Unemployment Comp. Bd. of Rev.*, 512 A.2d 812, 813-14 (Pa. Cmwlth. 1986). In that situation, the Court concluded that the employee's actions were justifiably provoked. *Id.* at 814 (reversing the denial of benefits to the employee). In *Kowal*, the employee responded to the supervisor's behavior by throwing a writing tablet at the supervisor, *i.e.*, assault, and uttering an expletive. *Id.* at 813.

Third, if a supervisor ordered the employee's coworker to deliberately provoke the employee, then we have excused the employee's actions. *Jose Perez v. Unemployment Comp. Bd. of Rev.*, 736 A.2d 737, 740 (Pa. Cmwlth. 1999) (*Jose Perez*). In *Jose Perez*, because the supervisor wanted to fire the employee, he instructed the coworker to provoke the employee into losing his temper. *Id.* at 739. While the employee was welding inside a steel bin, the coworker began hitting the bin with a hammer, which caused loud noises. *Id.* at 738. As a result, the employee confronted the coworker, "lightly pushed" the coworker, and was fired. *Id.* at 740. The *Jose Perez* Court reversed the denial of benefits, reasoning that the employee was justifiably provoked by the supervisor's intentional provocation. *Id.* at 742 (stating, "[w]hile antagonistic physical contact in the workplace, including the minor contact which occurred here, should not be condoned, neither should the conduct of a supervisor who intentionally provokes an employee").[15]

---

[15] In another case, this Court held that an employee's offensive remark was not willful misconduct when the employee's remark was prompted by her supervisor grabbing the employee's arm "in an apparent attempt to restrain her from walking to the lunchroom for her break." *Horace W. Longacre, Inc. v. Unemployment Comp. Bd. of Rev.*, 316 A.2d 110, 112 (Pa. Cmwlth. 1974) (*Longacre*). The *Longacre* Court categorized the supervisor's action as an "improper and unpardonable indiscretion by an executive" and that the employee was justified in voicing "her impulsive expletive." *Id.*

12

In sum, our Courts have held that an employee's actions were justifiably provoked when an employee (1) reasonably believes he is threatened with physical harm; (2) is directly targeted by severe, intimidating, loud, and aggressive speech; or (3) is subjected to intentional provocation in order to fabricate justification to fire the employee. *See Sun Oil*, 408 A.2d at 1171; *Kowal*, 512 A.2d at 813-14; *Jose Perez*, 736 A.2d at 742.

Instantly, and as we held above, competent evidence of record supports the Board's findings of fact regarding the janitor's crude statement. The parties also do not dispute that Claimant violated a workplace rule by shoving the janitor. *See* Pet'r's Br. at 29-31; Claimant's Br. at 12 & n.9. Rather, the parties' only dispute is whether, in light of all of the circumstances, Claimant's shove was justifiably provoked by the janitor's remark. *See Woodring*, 284 A.3d at 964; *Bell*, 74 A.3d at 1147-48.

Unlike the cases discussed above, the record does not indicate that the janitor threatened Claimant or her family with physical harm, subjected Claimant to intimidating, aggressive speech for a lengthy period of time, or was ordered to intentionally provoke Claimant. *See, e.g.*, *Sun Oil*, 408 A.2d at 1171; *Kowal*, 512 A.2d at 813-14; *Jose Perez*, 736 A.2d at 742. Even if we accept that the janitor's crude statement was highly offensive or that Claimant's shove was "automatic," Claimant cannot establish a justifiable provocation. *See, e.g.*, *John Perez*, 427 A.2d at 764; *Wolfe*, 425 A.2d at 1219; *Thorne*, 76 A.2d at 487 (holding that an employee's slap of the victim was not justifiably provoked even if the employee was insulted). Accordingly, the Board erred in holding that Claimant was justifiably provoked in shoving the janitor in response to his crude statement. We emphasize that we do not approve of the janitor's crude statement, but our courts have consistently held that

13

even highly offensive remarks cannot justify a physical act of violence, even if that act was instinctive or automatic. *See John Perez*, 427 A.2d at 764; *Wolfe*, 425 A.2d at 1219.

## IV. CONCLUSION

For these reasons, because the Board erred as a matter of law by holding that Claimant was justifiably provoked, we respectfully reverse the Board. *See Woodring*, 284 A.3d at 966. Because of our holding, we need not address Petitioner's remaining issue. *Metalico Pittsburgh Inc. v. Newman*, 160 A.3d 205, 214 n.15 (Pa. Super. 2017).[16]

LORI A. DUMAS, Judge

Judge Wallace did not participate in the decision in this case.

---

[16] We note, however, that Petitioner argued that Claimant's email violated 22 Pa. Code §§ 235.2(b) and 235.3(b), but Petitioner did not charge Claimant with violating those sections. *See* Pet'r's Br. at 38; Hr'g Ex. E-7 (notice of charges); *see also Scott v. Unemployment Comp. Bd. of Rev.*, 105 A.3d 839, 845 (Pa. Cmwlth. 2014) (stating, "[a]n employer is bound by its stated reasons for an employee's dismissal and cannot raise new reasons at the hearing").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reading School District,    :
       Petitioner  :
           :
    v.      :  No. 1644 C.D. 2019
           :
Unemployment Compensation  :
Board of Review,     :
       Respondent :

# **O R D E R**

AND NOW, this 20th day of January, 2023, we REVERSE the October 30, 2019 order of the Unemployment Compensation Board of Review.

          _____

          LORI A. DUMAS, Judge