# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kerry S. Kramer, : 
          Petitioner : 
         : 
      v. : No. 2276 C.D. 2015
         : Submitted: June 10, 2016
Unemployment Compensation : 
Board of Review, : 
          Respondent : 


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  August 25, 2016**


        Petitioner Kerry S. Kramer (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed an Unemployment Compensation Referee's (Referee) decision denying Claimant unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] because Claimant engaged in willful misconduct without good cause. For the reasons set forth below, we affirm.

        Claimant applied for unemployment compensation benefits after being discharged from his employment as a motor coach operator for Trans-Bridge

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to "willful misconduct in connection with his work."

Lines, Inc. (Employer). (Reproduced Record (R.R.) at 2a.) Claimant was discharged for his involvement in a physical altercation with a passenger. (R.R. at 2a.) The Allentown UC Service Center (Service Center) issued a determination finding Claimant eligible for benefits, which Employer subsequently appealed. (R.R. at 17a.)

A Referee conducted a hearing on September 15, 2015. (R.R. at 7a.) The sole issue on appeal was whether Claimant's employment was terminated for willful misconduct in connection with his work. (R.R. at 9a.) The Referee made the following relevant findings of fact:

1. The employer's union contract requires employees to have a hearing before they are discharged unless the discharge is for violent behavior.

2. The claimant was or should have been aware of his union contract.

3. On July 6, 2015, the claimant was driving a passenger bus from Pennsylvania to New Jersey.

4. The claimant became concerned about the behavior of some of his passengers.

5. The claimant stopped his bus on the New Jersey Turnpike and told the passengers to quiet down.

6. The claimant did not allow the passengers to explain a problem one of the passengers experienced and repeatedly told the passengers to be quiet and threatened to call the police.

7. The claimant began an argument with a female passenger and advanced toward the passenger until he was standing over the seated passenger and yelling at her.

2

8. The passenger pushed the claimant away from her and began to stand.

9. The claimant shoved the female passenger with both hands as she attempted to stand.

10. The female passenger was propelled back into her seat by the claimant's shove.

11. The other passengers loudly objected to the claimant's conduct.

12. The claimant contacted the police and ordered a few of the passengers off the bus.

13. The employer discharged the claimant for violently shoving a passenger.

(R.R. at 2a, 3a.)

The Referee rejected Claimant's assertion that self-defense justified his actions as good cause for deviation from the workplace policy. (R.R. at 3a.) The Referee found that Claimant, instead of attempting to retreat from the situation or deescalate the conflict, advanced toward a female passenger and engaged in a face-to-face argument that led to exchanged shoves. (*Id.*) Additionally, the Referee dismissed Claimant's accusations against the passengers alleging gang affiliations and drug usage, finding that such allegations are not supported by substantial evidence. (*Id.*) Accordingly, Claimant's testimony was rejected as unreliable. (*Id.*)

Based on these findings, the Referee reversed the determination of the Allentown UC Service Center and concluded that Claimant was ineligible for benefits under Section 402(e) of the Law. (*Id.*) Claimant appealed to the Board, which affirmed the Referee's decision and adopted the Referee's findings and conclusions. (R.R. at 1.) Claimant now petitions for review with this Court.

3

On appeal to this Court,[2] Claimant first argues that the Referee's findings of fact, as adopted and incorporated by the Board, were not supported by substantial evidence.[3] Second, Claimant argues that the Board erred as a matter of law in failing to take into consideration the totality of the circumstances surrounding his altercation, specifically that the State Police were called on the day in question and they removed multiple passengers from the bus.

We first address Claimant's argument that the Board's findings were not supported by substantial evidence. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. (*Id.*) A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984). Even if

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[3] While Claimant fails to specifically challenge any individual finding of fact, it appears that it is Claimant's intent to challenge finding of fact number 8, in which Claimant was found to be the instigator of the altercation that resulted in his dismissal.

4

evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

The Board, affirming the determination of the Referee, found Claimant's testimony that he felt threatened and acted in self-defense to not be credible. In an unemployment case, it is well settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985). Questions of credibility are not subject to re-evaluation on judicial review. *Id.* at 1388.

Here, a review of the record reveals that Employer presented substantial evidence to support the findings of the Referee. Employer offered video evidence of the physical altercation in which Claimant was involved. (R.R. at 3a.) The video of the altercation substantiated the findings that Claimant, while apparently in a verbal altercation, advanced towards a seated female passenger until he was standing over her, with words continuing to be exchanged. (R.R. at 2a, 3a.) Thereafter, the seated passenger pushed Claimant away and attempted to stand. (*Id.*) The video then showed that Claimant shoved the passenger with both hands as she attempted to stand, causing her to be propelled back into her seat. (*Id.*) The video did not show any attempt on behalf of Claimant to retreat or deescalate the situation prior to engaging in the altercation. Because the Board did not find Claimant's testimony claiming self-defense to be credible, we find that the Board's findings of fact are supported by substantial evidence.

5

Finally, we address Claimant's argument that the Board erred in concluding that Claimant's actions constituted willful misconduct[4] when it failed to take into consideration the fact that police officers asked multiple passengers to get off the bus after the physical altercation. The extent of Claimant's argument under this theory is as follows: "[i]t is difficult to justify the finding that the [Claimant] engaged in 'willful misconduct,' given the fact that the four disruptive passengers were removed from the Petitioner's bus by the New Jersey State [P]olice. This included the female passenger who was causing all of the protests." (Claimant's Br. at 11.)

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

---

[4] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). Once an employer has met its burden to establish willful misconduct, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 2013). An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the rule or policy and that the claimant violated it. *Walsh*, 943 A.2d at 369. If the claimant can show good cause for the violation—*i.e.,* "that the actions which resulted in the discharge were justifiable and reasonable under the circumstances," then the Board should not conclude that an employee's conduct constitutes willful misconduct. *Id.*

First, we must determine whether Employer sustained its burden and established a *prima facie* case of willful misconduct. As previously stated, where an employee is discharged for a violation of the employer's rule or policy, the employer must establish the existence of the policy and that the employee was aware of the policy. *Williams v. Unemployment Comp. Bd. of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). The Board found that Employer has a policy regarding violent behavior in the workplace,[5] and Employer discharged Claimant

---

[5] During the hearing, when asked to briefly summarize what the workplace policy contained in regards to violent behavior in the workplace, Employer said the following:

> "An employee shall not be suspended, discharged, held off, have (inaudible) against him and now the first time in the hearing. The only exceptions to this would be theft, improper handling of fares, possession of firearms, use of intoxicants or narcotics before going on duty, *and for violent behavior*, harassment, or serious accidents. An officer of the union is to be notified as promptly as possible in these exceptions."

(R.R. at 13a (emphasis added).)

7

for violating this policy. (R.R. at 1a.) Further, the Board found that Claimant was aware or should have been aware of the policy. (*Id.*) Although "violent behavior" is undefined in the Employer's policy, the Board adopted the Referee's finding that Claimant's actions constituted such behavior. As such, the Board concluded that Employer sustained its burden to establish a *prima facie* case of willful misconduct.

Because Employer satisfied its burden to prove a *prima facie* case of willful misconduct, the burden shifted to Claimant to prove he had good cause for deviating from the policy. To prove "good cause" the claimant must demonstrate that his actions were justifiable and reasonable under the circumstances. *Walsh*, 943 A.2d at 369. In support of his argument that he acted with good cause, Claimant urges the Court to consider the circumstances surrounding his actions. In this case, Claimant was concentrating on operating a motor vehicle on the New Jersey Turnpike when he was confronted with what Claimant saw as a potentially dangerous situation. Further, Claimant points to prior instances in which Claimant was concerned about gang sign graffiti on the side of buses and that Claimant had been contacted by a Drug Enforcement Administration (DEA) agent regarding drug trafficking and heroin use by some passengers. Claimant argues that based on a totality of the circumstances, including his prior experiences, it was reasonable for Claimant to feel threatened and act in self-defense. Thus, Claimant contends he had good cause for his actions.

In prior jurisprudence involving the defense of good cause for an employee's violent actions, this Court has previously held that good cause can be found notwithstanding the fact that a claimant made physical contact with another individual. *See Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484 (Pa.

8

Cmwlth. 2014); *Peeples v. Unemployment Comp. Bd. of Review*, 522 A.2d 680 (Pa. Cmwlth. 1987); *Sun Oil Co. v. Commonwealth*, 408 A.2d 1169 (Pa. Cmwlth. 1979). In each of the aforementioned cases, this Court held that the respective claimants were eligible for unemployment compensation benefits despite engaging in violent contact with another employee.

In *Peeples*, the claimant was a forklift operator who was discharged from his employment after a physical altercation with another employee, in violation of a workplace policy prohibiting fighting. *Peeples*, 522 A.2d at 681. On the day of the incident, the claimant was in his forklift when another employee approached the claimant, wanting him to vacate the forklift so that the other employee could use it. *Id.* The claimant declined the other employee's demand, at which time an argument ensued, culminating in an exchange of violent contact between the parties. *Id.* The claimant originally was determined to be ineligible for unemployment compensation benefits until this Court reversed the Board's decision, thereby granting the claimant benefits. *Id.* at 683. In doing so, this Court found that the claimant was not the aggressor, as the other employee accosted the claimant while he was inside his forklift with no ability to retreat. *Id.* at 682. Under these circumstances, the claimant "had no choice but to defend himself after words of solace and his own inactivity had proved ineffective." *Id.* In this instance, it was found that self-defense was a necessity, as there was no other reasonable avenue for the claimant to follow given the exigencies of the circumstances.

This Court finds *Peeples* to be distinguishable from the instant case, as not only did Claimant have ample opportunity to deescalate the situation, Claimant was also the main aggressor. When viewing the available video

9

recordings of the incident between Claimant and the passenger, it becomes clear that the video corroborates the finding of violent contact, in violation of the workplace policy. What the video does not corroborate, however, is Claimant's theory of self-defense. The video clearly shows Claimant advancing towards the passenger and engaging in a verbal argument, after which time the physical conflict occurred. At no point prior to Claimant shoving the passenger did Claimant attempt to deescalate the situation or retreat back to the driver's seat. Further, after making the initial contact with the passenger, Claimant continued to advance towards the passenger and stand over her momentarily, before ultimately returning to the front of the bus to call for assistance. In regards to the physical altercation with the passenger, the Referee, finding the same as this Court, opined that:

> The employer offered video evidence of a physical altercation between the claimant and a passenger. The claimant alleged that he felt threatened and that he shoved the passenger in self-defense. However, the claimant did not attempt to retreat from the situation or to deescalate the conflict. Instead, the claimant advanced toward a female passenger and engaged in a face-to-face argument that led to exchanged shoves. Under these circumstances, the claimant has not established that his conduct was self-defense and the claimant's involvement in a physical altercation is disqualifying.

(R.R. at 3a.) Claimant was not without ample opportunity to deescalate the situation. Where simple communication in an attempt to understand what the issue was could have served to alleviate the situation, Claimant played the role of aggressor, and threatened police involvement at a time when such was not necessary. In situations wherein the claimant is found to be the aggressor, a claim

10

of self-defense simply cannot be supported. *See Mula v. Commonwealth*, 407 A.2d 477 (Pa. Cmwlth. 1979).

A review of the record shows that neither the Referee nor the Board found Claimant's recollection of the circumstances to be credible, and found Claimant's testimony to be inconsistent with what actually happened. The Referee reasoned as follows:

> The claimant admitted that he had difficulty accurately recalling the events on June 6, 2015 and offered testimony that was inconsistent with the video and documentary evidence offered by the employer. Further, the claimant made baseless accusations against his passengers accusing them of using heroin and being affiliated with criminal gangs, none of which was supported by the evidence. Therefore, the claimant's testimony is rejected as unreliable and the employer['s] witnesses' testimony is accepted as credible.

(R.R. at 3a.)

The Board, in adopting the Referee's findings and conclusions, found Claimant's testimony to be not credible and found the testimony of Employer's witnesses to be credible. As previously stated, the Board is entitled to make such credibility determinations. *Peak*, 501 A.2d at 1386. Because the Board found Claimant's testimony to be not credible, the Board did not err in not giving credibility to the totality of the circumstances as Claimant perceived them.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kerry S. Kramer, :
                  Petitioner :
                                 :
          v. : No. 2276 C.D. 2015
                                 :
Unemployment Compensation :
Board of Review, :
                   Respondent :

## *O R D E R*

AND NOW, this 25th day of August, 2016, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge