# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Jami M. Dantry, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1665 C.D. 2017 |
| | : | Argued:  October 15, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge
                     HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                         **FILED:  January 31, 2019**

Petitioner Jami M. Dantry (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board).  The Board affirmed an Unemployment Compensation Referee's (Referee) decision, which determined Claimant ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1]  For the reasons set forth below, we reverse in part and remand the matter to the Board for consideration of an issue that it did not address.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant applied for unemployment compensation benefits after being discharged from her employment as an Occupational Therapist for Hope Learning Center (Employer).[2]  On May 3, 2017, the Erie Unemployment Compensation Center (Service Center) issued a notice of determination, finding Claimant ineligible for benefits under the Law.  Claimant appealed the notice of determination, and a Referee conducted a hearing.  At the hearing, Asha Persaud testified on behalf of Employer, and Claimant testified on her own behalf.[3]

Ms. Persaud, Executive Director for Employer, testified that Employer discharged Claimant for violations of HIPAA[4] and FERPA[5] and for insubordination. (Reproduced Record (R.R.) at 6a.)  Ms. Persaud then testified that the final incident which led to Claimant's termination was that Claimant forwarded an email with sensitive client information to Claimant's personal email account in direct violation of HIPAA and FERPA. (*Id.*)  More specifically, Ms. Persaud testified that while she did not know the exact section of HIPAA or FERPA that Claimant violated, she knew that Claimant's conduct of sending a client's information to a personal email account constituted a violation, because Claimant included the client's name, parent's name, and information regarding services received in an email she sent to her unsecured personal email account.  (*Id.* at 12a.)  Additionally, Ms. Persaud

---

[2] Employer intervened in this matter, and the Board notified the Court that it would not be filing a brief or participating in oral argument of this matter.

[3] Employer presented a second witness, Jacob Robinson, Employer's Finance Director, who testified for the purpose of admitting documents into the record.

[4] HIPAA refers to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.).

[5] FERPA refers to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (1974).

testified that Employer has a policy that prohibits employees from violating HIPAA or FERPA. (*Id.* at 10a.) The rule is located in the employee handbook and included in a confidentiality statement that Claimant signed. (*Id.*) Employer did not produce the handbook or the confidentiality statement for the record. (*Id.*) Ms. Persaud testified that she did not know whether Claimant actually received HIPAA/FERPA training, although Claimant signed a form indicating that she did receive the training on September 8, 2016. (*Id.*) Ms. Persaud additionally testified that Claimant engaged in an act of insubordination which led to her termination when she went to another employee requesting that said employee go above the supervisor to have an evaluation reassigned to her. (*Id.* at 7a.) Ms. Persaud next testified that, prior to the act of insubordination, Claimant received two written warnings for (1) being disrespectful to her co-workers and failing to comply with company policies, and (2) insubordination as a result of failing to follow directions and violating company rules requiring Claimant to advise Employer of any email from a school district rather than respond to it directly. (*Id.* at 9a, 12a.)

Claimant testified that she did not receive HIPAA/FERPA training. (*Id.* at 17a.) With regard to the form containing her signature acknowledging receipt of such training, Claimant explained that she signed the form along with a bunch of other papers after a full day of work. (*Id.*) Claimant additionally testified that she had good cause to send the email to herself, as she believed that Employer was fraudulently billing for her services. (*Id.*; Petitioner's Br. at 9.) More specifically, Employer asked Claimant to provide services to students who Claimant had asked Employer to discharge. (*Id.*) Employer also asked Claimant to prepare patient reports to be sent out with her clients' report cards. (*Id.*) Claimant then testified that she noticed that all of her reports were being submitted at midnight, which was not

3

when she was completing them. (*Id.*) Claimant took steps to ensure that her time was being billed appropriately by moving all of her appointments to her schedule. (*Id.*) Employer told Claimant that she was not allowed to do this, and Employer changed the date and time of billing back. (*Id.*) Claimant additionally discovered that several of her patients had been treated by someone else prior to Claimant providing treatment to them and were about to go over the amount of sessions agreed to in their individual education programs (IEPs). (*Id.* at 18a.) Claimant sent an urgent email to her supervisor without response, so she called Employer and spoke to a human resources representative who told her to speak to Ms. Persaud. (*Id.*) Claimant talked to Ms. Persaud after work, and Ms. Persaud stated that Claimant was mistaken in her assessment of the billing. (*Id.*) Claimant disagreed. (*Id.*) Claimant further testified that she could lose her occupational therapist license for overbilling or double billing clients. (*Id.*) As such, she was merely protecting herself in case of an audit by Employer or by her licensing board. (*Id.* at 17a.)

The Referee admitted into evidence a redacted copy of the email that Claimant forwarded to her personal email account and that Employer contends contains "individually identifiable health information." (*Id.* at 54a-55a.) The email, dated February 25, 2017, appears to forward two emails addressed to various individuals employed by Employer and various individuals employed by a school district. Although now redacted, the email appears to identify an elementary school student of the district by name and gender.[6] The email further discloses that the student was assigned to a specific person's classroom. The email also indicates the

---

[6] It is possible that the email only refers to the student by first name, but this is difficult to ascertain due to the redactions.

4

student's diagnosis and that the student had recently been reevaluated. Finally, the email reveals the type of therapies included in the student's IEP.

Following the hearing, the Referee issued a decision, in which he affirmed the determination of the Service Center, concluding that Claimant was ineligible for unemployment compensation benefits. Claimant appealed the Referee's decision to the Board, and the Board affirmed. In so doing, the Board made the following findings of fact:

1. The claimant was last employed as an occupational therapist by the employer The Hope Learning Center from September 8, 2016 and her last day of work was March 22, 2017.

2. The claimant had concerns about how the employer was billing and assigning appointments.

3. The employer has a policy requiring employees to comply with HIPAA and FERPA regulations.

4. HIPAA regulations require, among other things, covered entities to ensure compliance with the security of protected health information by their employees. 45 C.F.R. § 164.306.

5. The claimant signed an acknowledgement of this policy and was aware of the requirement.

6. The claimant received previous progressive disciplinary actions for insubordination.

7. The claimant forwarded an email from her work email to her personal email account.

8. The email contained personal health information about one of the claimant's students.

9. The claimant was discharged for violating the employer's HIPAA and FERPA policy and for insubordination.

(Board's Decision at 1-2, attached to Petitioner's Br. as Appendix "A.")

5

Based on the above findings, the Board concluded that Claimant was ineligible for benefits under the Law because Employer terminated her employment due to willful misconduct. The Board reasoned:

> Although the claimant testified that she did not receive any HIPAA training from the employer, the claimant was on constructive notice that she was required to comply with HIPAA. Additionally, the form signed by the claimant instructs employees to contact their compliance officer if they have questions about HIPAA or FERPA. While the claimant's counsel argues that the claimant did not share the protected information with anyone, HIPAA requires covered entities like the employer to protect sensitive information and the claimant sending an email with protected health information to her web based, non-encrypted personal email is a violation of that requirement.

(*Id.* at 2.) The Board further reasoned:

> At the hearing, the claimant testified that she had raised concerns to her supervisors about how the employer was billing, however, her concerns are not good cause for violating the employer's HIPAA policy. The Board credits the testimony of the employer witnesses that the claimant was discharged for violation of the HIPAA policy and for insubordination.

(*Id.* at 3.)

On appeal to this Court,[7] Claimant argues that substantial evidence of record does not exist to support the Board's findings that there was a policy regarding HIPAA or FERPA and that Claimant violated the policy. Claimant also argues that the Board erred in concluding that her conduct rose to the level of willful

---

[7] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

misconduct under Section 402(e) of the Law or, alternatively, the Board erred in failing to conclude that she had good cause for her actions.[8]

First, we will address whether the Board's findings of fact are supported by substantial evidence. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. (*Id.*) A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment case, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports

---

[8] We have paraphrased Claimant's issues on appeal based upon our review of Claimant's statement of questions involved and the arguments contained in her brief.

the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Claimant contends that the Board's findings that Employer had a HIPAA policy and Claimant violated it are not supported by substantial evidence of record. Claimant points to her own testimony and argues that the Board erred in accepting Ms. Persaud's testimony over hers. As to the specific finding of a violation of HIPAA or Employer's HIPAA policy, Claimant argues: (1) Employer offered no evidence that Claimant's actions constituted a "disclosure" under HIPAA; (2) Employer offered no evidence as to what information was contained in the email; and (3) Employer offered no evidence that the email Claimant forwarded contained "individually identifiable health information."[9]

Here, the Board resolved any conflicts in the testimony in favor of Employer and rejected the testimony of Claimant as not credible. (Board's Decision at 3.) The testimony of Ms. Persaud that Claimant signed a form stating that there was a work policy requiring compliance with HIPAA and that she was trained

---

[9] Under HIPAA's regulations, "individually identifiable health information" is defined as

> information which relates to the physical or mental health of an individual, the provision of health care to an individual or the payment for the provision of health care to an individual and (i) that identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103. Such information could include the individual's name, social security number, address, telephone number, medical record number, or health plan number. *See* 45 C.F.R. § 164.514(b) (directing such information to be removed to de-identify individually identifiable health information).

8

regarding the HIPAA policy supports the Board's finding that Employer had a policy requiring employees to comply with HIPAA and that Claimant constructively knew of the policy. (Board's Decision and Order at 1.) Although Employer contends that Claimant's conduct violated HIPAA, it did not cite any provisions of HIPAA that it claims Claimant's conduct violated or any legal authority for the proposition that Claimant's conduct violated HIPAA. Further, Employer did not provide any evidence of the content of its HIPAA policy, other than testimony that the policy prohibits employees from violating HIPAA. Without more, we cannot conclude that substantial evidence exists to support a finding that Claimant violated HIPAA or Employer's HIPAA policy, although substantial evidence does exist to support finding that Employer has some type of HIPAA policy.[10]

We address next Claimant's contention that the Board erred in concluding that her conduct rose to the level of willful misconduct under Section 402(e) of the Law.[11] Section 402(e) of the Law provides, in part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his employment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth.

---

[10] An unemployment compensation case is not the proper forum under which this Court should determine whether particular conduct constitutes a violation of an unspecified provision of HIPAA, particularly when presented with only a general argument and no citation to legal support for the position.

[11] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

9

2008). The term "willful misconduct" is not defined by statute. The courts have defined "willful misconduct" as follows:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the rule or policy and that the claimant violated it. *Walsh*, 943 A.2d at 369. In the event that the court finds that a claimant's conduct constitutes willful misconduct, a claimant can still receive benefits if he can show that he had good cause for his willful misconduct. *Walsh*, 943 A.2d at 369. A claimant bears the burden of proving good cause for his actions. *Id.*

Here, Claimant argues that the Board erred in concluding that her conduct rose to the level of willful misconduct, because, contrary to the Board's finding, Employer failed to establish that Claimant violated HIPAA or Employer's HIPAA policy. As discussed above, we agree with Claimant that, in the absence of specifics regarding Employer's HIPAA policy or some legal authority identified by Employer to support a HIPAA violation, the Board erred in concluding that Employer met its burden to prove that Claimant's conduct rose to the level of willful misconduct based upon a violation of HIPAA or Employer's HIPAA policy.

Our analysis, however, does not end here. Employer contends that, even if Claimant's conduct of forwarding an email from her work account to her personal account did not rise to the level of willful misconduct, the Board correctly concluded that Claimant engaged in insubordination that constituted willful

10

misconduct. Employer misapprehends the Board's opinion and order. The Board, while finding that insubordination was one of the bases upon which Employer terminated Claimant's employment, did not make any findings relating to whether Claimant engaged in insubordination when she allegedly attempted to go over the head of her supervisor to get a case assigned to her, nor did it conclude that Claimant's alleged insubordination constituted willful misconduct. Thus, because the Board did not consider Employer's argument that Claimant's alleged insubordination constituted willful misconduct, we must remand the matter to the Board to consider this issue.

Accordingly, we reverse the decision of the Board with respect to its determination that Claimant's conduct rose to the level of willful misconduct based on a violation of HIPAA or Employer's HIPAA policy, and we remand this matter to the Board to consider Employer's contention that Claimant's alleged insubordination constitutes willful misconduct.

 

 

P. KEVIN BROBSON, Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Jami M. Dantry,                               :
               Petitioner      :
                             :
      v.                            :   No. 1665 C.D. 2017
                             :
Unemployment Compensation                     :
Board of Review,                              :
               Respondent      :

## O R D E R

AND NOW, this 31st day of January, 2019, the order of the Unemployment Compensation Board of Review (Board) is REVERSED to the extent that it concluded that Jami M. Dantry's (Claimant) conduct rose to the level of willful misconduct based on a violation of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.), or Hope Learning Center's HIPAA policy, and the matter is REMANDED to the Board for the issuance of a decision determining whether Claimant's alleged insubordination constitutes willful misconduct.

Jurisdiction relinquished.

 

                                            _____
                                            P. KEVIN BROBSON, Judge