## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyler Transport and Towing, LLC,   :
             Petitioner   :
                            :
                            :
         v.                     :   No. 1994 C.D. 2015
                            :   Submitted:  March 24, 2016
Unemployment Compensation   :
Board of Review,               :
            Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED:  August 26, 2016**


Petitioner Tyler Transport and Towing, LLC (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board), affirming a Referee's decision and granting Sidney Smith (Claimant) unemployment compensation benefits.  For the reasons set forth below, we reverse.

Claimant filed for unemployment compensation benefits following his discharge from Employer.  The Altoona UC Service Center (Service Center) issued a notice of determination, finding Claimant ineligible for benefits pursuant

Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. (Reproduced Record (R.R.) at 13a.) Claimant appealed the Service Center's determination, and an unemployment compensation referee (Referee) conducted a hearing on May 27, 2015. (R.R. at 22a.) Following the hearing, the Referee issued a decision, in which she reversed the Service Center's determination, finding Claimant eligible for unemployment compensation benefits. (R.R. at 68a-69a.) Employer appealed the Referee's order to the Board, which affirmed the Referee's decision. (R.R. at 78a-80a.) In doing so, the Board made its own findings of fact and conclusions of law. (*Id.*) The Board made the following findings:

> 1. The claimant was last employed as a full-time driver by Tyler Transport and Towing LLC from January 14, 2010, at a final rate of $16.00 per hour and his last day of work was April 8, 2015.
>
> 2. The employer moves freight for other companies. Part of the claimant's job duties as a driver included properly loading and securing freight on his truck.
>
> 3. The employer's driver operations manual provides that drivers are to deliver orders safety (sic) and secure all freight properly to eliminate damage during transit. The claimant was aware of the employer's policy for securing freight.
>
> 4. On February 18, 2015, the claimant received a warning for failing to properly secure freight on February 16, 2015 which caused damage to the freight and the employer's truck. The warning stated that any further incidents of failure to secure freight properly would result in his discharge.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L (1937) 2897, *as amended*, 43 P.S. § 802(e).

5.	The claimant picked up freight at various client loading docks and the employer expected the claimant to contact a manager from Tyler Transport if he was having issues loading freight at a client's dock.

6.	On April 8, 2015, the claimant picked up freight at the Pilot Transport dock and was then assigned to pick up 10 electric scooters at the AIT dock.

7.	Before leaving the Pilot Transport dock, the claimant contacted the operations manager at Tyler Transport and advised that he did not think he would be able to fit the scooters onto the truck with the other freight that was already loaded.

8.	The operations manager told the claimant "see what you can do."

9.	The scooters were in individual boxes which stated on the side that the boxes were to be kept upright and not stacked.

10.	The claimant had delivered scooters before and was aware that they were to be kept upright and not stacked.

11.	The claimant took the scooters out of the boxes and stacked the scooters into the back of the truck on their sides to make them fit onto the claimant's truck.

12.	When the claimant arrived at the client's location, the client refused the load of scooters because they were stacked on their sides. The scooters contained oil and stacking them on their sides may have damaged them.

13.	On April 9, 2015, the employer discharged the claimant for failing to properly load freight on April 8, 2015.

(R.R. at 78a-79a.)

Based on the above-listed findings, the Board concluded that Claimant did not commit willful misconduct in improperly stacking the scooters and was

3

eligible for unemployment compensation benefits. In so holding, the Board reasoned, in part:

> The claimant testified that the operations manager of Tyler Transport told him to stack the scooters to make them fit on the truck. The Board does not find the claimant's testimony in this regard to be credible. However, the Board credits the claimant's testimony that the operations manager told him "see what you can do."
>
> The employer argues that the claimant previously delivered scooters and the claimant was aware that the scooters were to be kept upright. However, based on the operation manager's directive of "see what you can do" to make the scooters fit, the Board finds that the claimant *used poor judgment in stacking the scooters*. Use of poor judgment is not willful misconduct. Benefits are granted to the claimant . . . .

(R.R. at 80a (emphasis added).)

On appeal,[2] Employer essentially argues that the Board erred as a matter of law in concluding that Claimant's conduct constituted poor judgment and did not rise to the level of willful misconduct.[3]

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

[3] Employer also appears to argue that substantial evidence does not exist to support the Board's "finding" that Claimant "used poor judgment in stacking the scooters improperly." (Petitioner's Br. at 6; R.R. at 80a.) Although couched as a finding in the Board's reasoning, it appears that the Board actually concluded, as a matter of law, that Claimant's actions constituted poor judgment and not willful misconduct.

4

with his work."[4]  The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct.  *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).  The term "willful misconduct" is not defined by statute.  The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard of employer's interests, (b) deliberate violation of the employer's rules, (c) disregard of standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties and obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).  Willful misconduct includes an employee's deliberate violation of an employer's rule and an employee's disregard of the standard of behavior expected by an employer.  *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Comp. Bd. of Review*, 309 A.2d 165, 168 (Pa. Cmwlth. 1973).  An employer, seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies, must prove the existence of the rule or policy and that the claimant violated it.  *Walsh*, 943 A.2d at 369.  If, however, the claimant can show good cause for the violation, then there should be no finding of willful misconduct.  *Id.*  An employee who ignores clear and simple instructions from his employer without establishing good cause engages in willful misconduct.  *Hartman v. Unemployment Comp. Bd. of Review*, 455 A.2d 756, 757 (Pa. Cmwlth 1983).  A single incident of

---

[4] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court.  *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

misconduct may support a denial of benefits. *Jones v. Unemployment Comp. Bd. of Review*, 373 A.2d 791, 792 (Pa. Cmwlth. 1977).

First, we must determine whether Employer sustained its burden and established a *prima facie* case of willful misconduct. In doing so, Employer must initially establish the existence of a policy or rule. Here, Employer testified that there is an operations manual provided to all employees when they start their employment. (R.R. at 29a.) This operations manual outlines policies and procedures for many aspects of the job, including a directive that indicates freight must be loaded and secured safely and properly. (*Id.*) Employer further testified that the operations manual states that drivers must "[s]ecure all weight properly to eliminate damage during transit." (R.R. at 30a.) In a previous incident, Claimant received a written warning from Employer after Claimant failed to properly secure freight, ultimately causing approximately $20,000 worth of damage to one of the shipping trucks. (R.R. at 33a.) Employer further testified that after the previous incident, Claimant was re-informed of the policies and procedures involved in securing freight and was informed that another violation of this nature would result in his termination. (R.R. at 34a.) Based upon this testimony, Employer sustained its burden to establish that it maintains a policy regarding the proper securing of freight.

The second requirement of Employer's *prima facie* case is to show that Claimant was or should have been aware of the policy. Based upon the testimony discussed above, the Board found that Claimant had previously received a warning regarding properly securing freight. Employer, therefore, met its burden to establish that Claimant was or should have been aware of Employer's policy.

6

Additionally, Employer must establish the third requirement of its *prima facie* case by showing that Claimant violated Employer's policy. Employer testified that it first discovered that the scooters had been loaded improperly after the customer had refused shipment. (R.R. at 37a.) Thereafter, Claimant also testified to stacking the scooters improperly. (R.R. at 46a-47a.) As the Board found this testimony credible, Employer satisfied its burden of proving Claimant violated the policy.

Once an employer has satisfied its burden, however, the burden then shifts to the claimant to show good cause as justification for the conduct considered willful. *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993) (citing *Mulqueen v. Unemployment Comp. Bd. of Review*, 543 A.2d 1286 (Pa. Cmwlth. 1988)). The employee establishes good cause where his actions are justified or reasonable under the circumstances. *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011) (citing *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518 (Pa. Cmwlth. 1999)).

Here, Claimant failed to establish good cause for improperly stacking the scooters. At the hearing in front of the Referee, Claimant testified to being aware that the scooters would not fit on his truck before he attempted to load them. (R.R. at 46a-48a.) Further, Claimant testified to knowing that the scooters needed to be loaded properly as to avoid damaging the freight.[5] (*Id.*) When Claimant

---

[5] In regards to why the scooters had to be loaded a certain way to avoid damage, Employer testified that these scooters contain oil, and when the scooters are improperly loaded, the oil inside may cause damage to the scooter. Claimant stacked some of the scooters on their side, which put the scooters at risk of damage, prompting the customer to refuse delivery. (C.R., Item No. 10.)

followed company protocol by bringing this potential issue to the attention of a manager (Pat Corbett), Mr. Corbett responded by telling Claimant "see what you can do." (R.R. at 46a.) Mr. Corbett's statement occurred at the Pilot Transport dock, prior to Claimant driving to the AIT dock to pick up and attempt to load the scooters. (*Id.*) Upon arriving at the AIT dock, Claimant's suspicions were confirmed, as the scooters would not fit inside his truck. It was at this point that Claimant decided to load the scooters improperly, in violation of the company policy requiring Claimant to secure freight safely and properly.

At no point after confirming his beliefs that the scooters would not fit did Claimant attempt to contact Mr. Corbett for further guidance on how to resolve the situation. Mr. Corbett's statement of "see what you can do" was not the equivalent of giving Claimant permission to violate company policy and stack the scooters improperly, potentially damaging them. Rather, Mr. Corbett's statement merely instructed Claimant to see *if* the scooters fit. Rather than attempting to load the freight, confirming that it would not fit, and contacting Mr. Corbett or another Tyler manager for further instruction, Claimant chose to stack the freight improperly, in an effort to complete his assigned task.

Nevertheless, the Board argues that this Court has held in prior instances that good-faith violations of an employer's rule do not rise to the level of willful misconduct.[6] These cases, however, are distinguished on their facts. In

---

[6] *See Frazier v. Unemployment Comp. Bd. of Review*, 411 A.2d 580 (Pa. Cmwlth. 1980); *Assise v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 2507 C.D. 2011, filed January 4, 2013). Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), relating to the citing of judicial opinions, an unreported opinion of the Court may only be cited "for its persuasive value, but not as binding precedent."

8

*Frazier v. Unemployment Compensation Board of Review*, 411 A.2d 580 (Pa. Cmwlth. 1980), the claimant was employed as a book store manager in a mall, and inadvertently left a bag of the store's money out in the open. *Frazier*, 411 A.2d at 581. Thereafter, the bag went missing. *Id.* Claimant immediately called the police and filed a report concerning the bag and its contents being stolen. *Id.* Thereafter, the bag was found, and a majority of the money was missing, presumably stolen. *Id.* Employer then discharged Claimant for a violation of a company policy. *Id.* The Board found that the claimant's actions in losing the bag were "an honest mistake, made by an employee who was aware of his responsibilities and unintentionally erred in his efforts to perform them." *Id.* at 582. The Court, in affirming the Board's order, was persuaded by the lack of evidence that would evince wrongful intent, culpability, or substantial disregard for the employer's interests on behalf of the claimant. *Id.* The Court, however, observed that had the claimant deliberately decided to break the employer's rule, even for good reason, the result may have been different. *Id.*

Comparing *Frazier* to the matter now before the Court, we note that in *Frazier*, the claimant did not disregard the employer's interest, as the claimant inadvertently misplaced the money and did not intentionally leave the money out in the open. Here, however, Claimant intentionally stacked the scooters improperly, in violation of Employer's clear work rule to properly secure freight to eliminate damage during transit. Claimant, after arriving at the AIT dock, made no attempt to recontact Employer to update that the scooters, in fact, could not be loaded properly and to seek further instructions or guidance. Claimant has provided no reasonable explanation justifying his failure to recontact Employer

9

before deciding on his own to violate Employer's work rule. Thus, Claimant failed to establish good cause for his actions.

Claimant, although conceivably well-intended in his actions to complete his duties, engaged in conduct that amounted to a violation of Employer's work rule, and did not have good cause for the violation. The Board, therefore, erred in concluding that Claimant's actions did not rise to that of willful misconduct.

Accordingly, the order of the Board is reversed.


_____
P. KEVIN BROBSON, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyler Transport and Towing, LLC, :
                           Petitioner :
                                     :
           v. : No. 1994 C.D. 2015
                                       :
Unemployment Compensation Board :
of Review, :
                         Respondent :

## *O R D E R*

AND NOW, this 26th day of August, 2016, the order of the Unemployment Compensation Board of Review is hereby REVERSED.

_____
P. KEVIN BROBSON, Judge