Jeffry Schott, :
           Petitioner :
            :
    v. : No. 778 C.D. 2021
            :
Unemployment Compensation :
Board of Review, :
           Respondent : Submitted: August 19, 2022

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                           FILED: November 17, 2022

Jeffry Schott (Claimant) petitions for review of the March 12, 2021 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from work for willful misconduct. We affirm the Board's Order.

## Background

Claimant was employed full time as Budget Director for the County of Delaware (Employer) from April 13, 2020, through May 26, 2020. Bd.'s Finding of

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for UC benefits for any week in which his unemployment is due to his discharge from work for willful misconduct. 43 P.S. § 802(e).

Fact (F.F.) No. 1. When he applied for the position, Claimant stated that he resided in Boothwyn, Pennsylvania, a municipality in Delaware County. *Id.* No. 2.

After hiring Claimant, Employer conducted an investigation into Claimant's place of residence and determined that Claimant resided in Wilmington, Delaware. *Id.* No. 3. At that time, however, Claimant resided in neither Boothwyn nor Wilmington; he resided in Philadelphia, Pennsylvania. *Id.* No. 4.

Employer has a policy stating that its employees must reside in Delaware County, but Employer allows an employee to relocate to Delaware County within six months after beginning a position with Employer. *Id.* No. 5.[2] Following its investigation, Employer determined that Claimant had lied about his place of residence in his application materials; as a result, Employer discharged Claimant for making false statements in his application. *Id.* No. 6.

Claimant filed a claim for UC benefits, which the local UC Service Center denied. Based on its review of the initial claim record, the Service Center found:

> [C]laimant stated he thought he had six . . . months to move into [Delaware C]ounty. [Employer's] staff informed him that the six[-]month period was not factual and no one would have cause to offer him the [six-]month extension since he said he lived in Delaware

---

[2] Employer's residency policy states in pertinent part:

*No [p]erson shall be eligible for employment with the County of Delaware unless he or she is a resident of, and lives within the geographical boundaries of[,] the County of Delaware.*

An employee who lives in Delaware County at the time of employment and then decides to move out of Delaware County will lose his/her right to continued employment with the County of Delaware.

Record (R.) Item No. 4 (emphasis added).

[C]ounty. [C]laimant's actions[] showed a deliberate violation of [E]mployer's rule/requirements and willful misconduct.

R. Item No. 6. Therefore, the Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Claimant appealed to the Referee, who held a telephone hearing on October 16, 2020. Employer presented the testimony of its Leave Program Coordinator, Christine Cuthbert, and Claimant testified on his own behalf.

Ms. Cuthbert testified that Employer discharged Claimant for "[f]alsification of the application process." Notes of Testimony (N.T.), 10/16/20, at 11. She explained that Claimant identified his place of residence as Boothwyn, Pennsylvania, on his job application and "on all his . . . paperwork for his application," but the driver's license he subsequently provided to Employer had a Wilmington, Delaware, address, "and that's when we first started questioning where he lived." *Id.* at 11-12. Ms. Cuthbert explained:

> *I do the paperwork for new hires.* When they fill out the paperwork for new hires, with the I-9 [tax] form, we need [a] driver's license, proof of residency. So[] . . . we could take a passport, we take a driver's license, social security, and . . . *we check to make sure that . . . the driver's license matches the items that they have given us . . . on record.*

*Id.* at 20 (emphasis added).

Ms. Cuthbert testified that Employer then "took measures to see where [Claimant] lived, and . . . found . . . that he was actually coming and going in the mornings and evenings from the Wilmington, Delaware address." *Id.* at 12. She testified that Employer had "surveillance pictures . . . of [Claimant's] car parked at [his] Wilmington address . . . [o]n multiple days." *Id.* at 15-16.

Ms. Cuthbert testified that, after the investigation, a meeting took place between Claimant, Barbara Hatton, and Kate Bryan on May 27, 2020. *Id.* at 12-13.

3

Ms. Cuthbert was not present at the meeting, but she "sit[s] right outside [Ms.] Hatton's office" and "saw the meeting happen." *Id.* at 13. She testified:

> I did see them enter . . . the office. The meeting did happen, and [Claimant] was terminated. . . . [T]he only thing I want to add is the six-month policy, . . . *since he stated he lived in the county, the six-month policy[] . . . does not apply, because it's more of a falsification that . . . he was term[inated] for, and not that he lived out of the county. It's that he falsified where he lived*.

*Id.* at 14 (emphasis added).

On cross-examination, Ms. Cuthbert testified that Marianne Grace was Employer's Executive Director at the time of Claimant's hiring and was one of the people responsible for hiring Claimant. *Id.* at 18. Ms. Cuthbert testified that Employer discharged Ms. Grace a few weeks after Claimant's discharge. *Id.* at 17-18. Ms. Cuthbert also testified that she was not involved in Claimant's interview process, but she knew that he was interviewed by "many people." *Id.* at 14-15.

Ms. Cuthbert further testified:

> The six[-]month issue would've come into play if [Claimant had] said I'm moving into Delaware County, but I live in Delaware. *We would've had him sign an affidavit stating he would move within six months. He didn't sign the affidavit because he never revealed [that] he lived in Delaware*. . . . Our entire statement is the *falsification of the application* and where [Claimant] stated [he] lived. . . .

*Id.* at 31 (emphasis added).

Claimant testified that before working for Employer, he worked for the City of Philadelphia for two years. *Id.* at 10. With regard to his residency, Claimant testified:

> *I lived in Philadelphia, Pennsylvania for about the last two years prior to taking the job in Delaware County, and I was in the process*, literally

4

in the process, like, I had stuff all over the globe. . . . *I was moving out of my condo in Philadelphia, and I was moving back to Delaware County.* Now, my grandmother had died. *I was in the process of purchasing that house[]* . . . I explained that to at least six people that . . . interviewed me. . . .

*Id.* at 24 (emphasis added).

Claimant testified that the Boothwyn address on his application was his deceased grandmother's address and reiterated that he was "in the process" of purchasing her home. *Id.* at 25. Claimant testified that when he applied for the position, his thought process was: "[T]hey're not going to harass me if I'm not all the way in Delaware County right now, because I've got a lot of things in flux," so "I'll apply for this job." *Id.* Claimant further testified:

[Employer] bring[s] me in for eight interviews. . . . They all ask me so, what's your situation? How come you don't work for Philadelphia anymore? Don't you have to live there to work there? I said *yeah, . . . I live there, I have a condo there, but . . . I'm moving back to Delaware County, Pennsylvania.* My grandmother just died a year and a half ago. I'm in the process of buying her house. You know, my kids live in Delaware. I got all kinds of issues but, you know, *I'm going to end up being in Delaware County at my grandmother's house*, okay? That was the game plan for me[] . . . .

. . . .

. . . I spoke to . . . eight people. I told them all my situation, and in each of those interviews, they said don't worry about it, you're fine, you [have] six months . . . to get all your stuff together . . . and switch your driver's license and do this and do that.

*Id.* at 25-26 (emphasis added). According to Claimant, the job description for the Budget Director position "d[id]n't say that [he] had to give a full disclosure of anything before [he] got there." *Id.* at 26.

Claimant testified that when he applied for the position, he "was living on a consistent and regular basis at 1850 Larkin Road [in Boothwyn] at . . . [his] deceased grandmother's house." *Id.* at 27. He also testified that he owns a property in Chichester, Delaware County. *Id.* With regard to his grandmother's home, Claimant testified that "it's still in [her] estate currently" and that, for the past year and a half, his father and uncle have been "arguing about the price of the house so that [Claimant] can buy it." *Id.* at 29-30.

When asked about the Wilmington address on his driver's license, Claimant testified:

> [P]rior to getting the job in Delaware County, I was offered a position with the State of Delaware that I turned down to take the job at Delaware County. So, I went to Delaware and got a Delaware driver's license, because that's where I thought I was going to be, and then Delaware County offered me the job, and I went to get a Pennsylvania driver's license, where I was actually living, and they said oh, we're closed [due to the COVID-19 pandemic].

*Id.* at 28. Claimant also testified:

> [T]he reason that I don't live in Delaware is because my wife and I are having issues. That's the bottom line. It's none of Ms. Cuthbert's business, it's none of [Employer's] business at all, and I don't feel that I have to explain that, but that's fine. If that's . . . the issue that they have, they should have asked me[] . . . , and I did, in full disclosure, explain my situation to at least six people during the interview process.

*Id.* at 25.

Finally, Claimant testified:

> If I was trying to be deceptive, I would've just put the address of the property that I own [in Chichester] on the application, but that was not my intent, and that was not the facts of the matter. . . . *[Boothwyn was] where I was living. That's where I slept on a regular basis. Aside from*

6

*the times where I had to watch my kids [in Wilmington] because my wife had to go to work.*

*Id.* at 31-32 (emphasis added).

Following the hearing, the Referee concluded that Claimant was discharged for falsifying his place of residence on his employment application, which amounted to willful misconduct. Ref.'s Order, 10/26/20, at 2. The Referee discredited Claimant's testimony that he did not deliberately falsify his application because he was in the process of moving to Delaware County. *Id.* The Referee explained his ruling as follows:

> [E]mployer['s] witness argued that [C]laimant was discharged for providing false information about his residency when he applied for the position of Budget Director with the County of Delaware. [C]laimant argued that he did not make a misrepresentation because he was in the process of moving. For the following reasons, *the [R]eferee does not find [C]laimant's statements regarding his residency credible and finds that [E]mployer has met its burden of proving willful misconduct in connection with [C]laimant's work.*
>
>  . . . [E]mployer determined that [C]laimant was living in Wilmington, Delaware[,] despite stating that he lived in Delaware County, Pennsylvania[,] when he applied for his position. According to [E]mployer['s] witness, had [C]laimant disclosed his residence, he would have been afforded six months to relocate to Delaware County. [C]laimant argued that he was never given the chance to move; *the [R]eferee finds [C]laimant's argument immaterial because [E]mployer discharged [him] for providing false information when applying for his position. [E]mployer did not discharge [C]laimant for his place of residence.*
>
> In response to [E]mployer's basic allegation, [C]laimant stated that he was going to move to Delaware County, and he actually lived in Philadelphia County at the time of his application and employment with Delaware County. In other words, *even if [E]mployer was incorrect in its conclusion that [C]laimant was living in Wilmington, Delaware, [E]mployer's material conclusions, i.e.[,] that [C]laimant*

7

*misrepresented his place of residence in his application, holds true; [C]laimant did not reside in Delaware County when he asserted that he did. Since [E]mployer discharged [C]laimant for providing false information in his application for employment, [he] is still liable for providing false information even if his actual residence [was] in Philadelphia rather tha[n] Wilmington. In either case, he misrepresented his residency when he applied [for] the . . . Budget Director position. . . .*

*Id.* at 2-3 (emphasis added). Therefore, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.* at 3.[3]

Claimant appealed to the Board, which adopted the Referee's findings of fact and conclusions of law on the issue of willful misconduct and affirmed the Referee's decision. Bd.'s Order, 3/12/21, at 1. Claimant now appeals to this Court.[4]

## Analysis

Our courts have defined "willful misconduct" as: (a) a wanton or willful disregard of the employer's interests; (b) a deliberate violation of the employer's rules; (c) a disregard for the standards of behavior that the employer rightfully can expect of its employees; or (d) negligence indicating an intentional disregard of the

---

[3] The Referee also determined that Claimant was liable for a fault overpayment in the amount of $2,232. Ref.'s Order, 10/26/20, at 3. However, the Board subsequently reversed that portion of the Referee's Order, finding:

> [C]laimant did not provide false information to the UC Service Center about the reason for his discharge. [He] reported that he was discharged because [E]mployer accused him of violating a residency rule, and that is accurate. Because there is insufficient evidence that the overpayment was due to [C]laimant's fault, a non-fault overpayment is assessed under Section 804(b) of the . . . Law[, 43 P.S. § 874(b)].

Bd.'s Order, 3/12/21, at 1.

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

employer's interests or of the employee's duties or obligations. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003). The employer bears the burden of proving that the claimant was discharged for willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).

This Court has held that "supplying false information on an employment application constitutes willful misconduct justifying the denial of [UC] benefits." *Huyett v. Unemployment Comp. Bd. of Rev.*, 477 A.2d 900, 901-02 (Pa. Cmwlth. 1984); *see Sill-Hopkins v. Unemployment Comp. Bd. of Rev.*, 563 A.2d 1288, 1290 (Pa. Cmwlth. 1989). To satisfy its burden of proof, the employer must show that "the [employee's] falsification or concealment [was] deliberate, and that the information [was] material to the qualifications of the employee for the job." *Johnson v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 724, 725 (Pa. Cmwlth. 1981).

First, Claimant challenges the Board's findings that he lied about his place of residence in his employment application and that Employer discharged him for making false assertions in his application. Claimant's Br. at 19. According to Claimant, these findings imply that during the interview process, Claimant deliberately concealed his living arrangements and, as to that issue, the Board's findings are "based entirely on [Ms.] Cuthbert's [inadmissible] hearsay testimony." *Id.* at 20. We conclude that Claimant has mischaracterized the Board's findings.

During her testimony, Ms. Cuthbert offered testimony regarding purported verbal exchanges between other Employer representatives and Claimant about his residency, and Claimant objected to some of that testimony on hearsay grounds. *See* N.T., 10/16/20, at 14, 21, 30. Importantly, however, the Board did not rely on that testimony in making its findings of fact or conclusions of law. Rather, the Board

9

based its willful misconduct determination on Claimant's written representations in his application paperwork, about which Ms. Cuthbert had personal knowledge as the individual who "do[es] the paperwork for new hires." *Id.* at 20; *see* Bd.'s F.F. No. 6 ("[E]mployer determined that [C]laimant had lied *in his application materials* regarding his residence and discharged [him] for making false assertions *in his application*.") (emphasis added).

Next, Claimant asserts that the Board erred in concluding that he committed willful misconduct because Employer failed to establish, and the Board did not specifically find, that he deliberately misrepresented his place of residence on his employment application. He claims that he did not intentionally misrepresent where he lived, because the unrebutted evidence showed that he was regularly living in Boothwyn at the time and he believed he had six months to move after he was hired. Claimant's Br. at 19, 28-29. We disagree.

It is undisputed that Claimant stated in his employment application that he resided in Boothwyn, which is located in Delaware County. Bd.'s F.F. No. 2. At the hearing, Claimant testified that he lived in Philadelphia for the prior two years while working for the City of Philadelphia, but he was "in the process" of moving into his deceased grandmother's home in Boothwyn and was sleeping there "on a regular basis." N.T., 10/16/20, at 24-25, 32. The Board, however, rejected Claimant's testimony that he was regularly living in Boothwyn as not credible. Ref.'s Order, 10/26/20, at 2; Bd.'s Order, 3/12/21, at 1; *see Russo v. Unemployment Comp. Bd. of Rev.*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010) (stating that the Board is the ultimate factfinder and is empowered to make credibility determinations and reject the testimony of any witness); *Korpics v. Unemployment Comp. Bd. of Rev.*, 833 A.2d 1217, 1219 n.1 (Pa. Cmwlth. 2003) ("In making [credibility]

10

determinations, the Board may accept or reject the testimony of any witness in whole or in part."). While the Board did not use the term "deliberate" in describing Claimant's conduct, it found that "Claimant *had lied in his application materials regarding his residence*," Bd.'s F.F. No. 6 (emphasis added), which implies that his representation was intentional and not unintentional or negligent.

Claimant also asserts that Employer failed to establish that his place of residence was material to the Budget Director position, because Employer's job posting stated that an applicant must be willing to move to Delaware County within six months after accepting the position. Claimant's Br. at 29-30. In support of this claim, Claimant offered into evidence one of Employer's recent job postings for a different position, which stated: "**Residency Requirement:** [Employer] has a residency requirement for employees. Anyone applying for this job must reside in Delaware County *or be willing to move to Delaware County within six months of starting employment*." N.T., 10/16/20, Claimant's Ex. 2 (bold in original) (italics added). Claimant also testified that during the interview process, Employer's representatives told him he did not need to worry about his residency because he would have six months to move to Delaware County if he got the job. N.T., 10/16/20, at 26.

"[W]here an employee is fired for supplying false information on his employment application, an employer must show that the omitted information is *material to the employee's qualifications for the job* in order to establish willful misconduct." *Bruce v. Unemployment Comp. Bd. of Rev.*, 450 A.2d 1083, 1085 (Pa. Cmwlth. 1982) (emphasis added). Whether a given misrepresentation is material depends on the facts of each case. *Sill-Hopkins*, 563 A.2d at 1290. The requirement of materiality, however, is not limited "to formal job prerequisites only." *Scott v.*

11

*Unemployment Comp. Bd. of Rev.*, 474 A.2d 426, 427 (Pa. Cmwlth. 1984). In other words, "it has never been the law that an employee must be truthful only as to matters concerning specific job prerequisites and may freely provide false or misleading information as to any other factor which could encourage an employer to select him or her." *Sill-Hopkins*, 563 A.2d at 1290.

In this case, the Board found that Employer has a policy requiring that its employees reside in Delaware County. Bd.'s F.F. No. 5; R. Item No. 4. Claimant was aware of Employer's residency requirement when he applied for the Budget Director position, as he admitted that the requirement was included in all of Employer's job postings. *See* N.T., 10/16/20, at 22; *id.*, Claimant's Ex. 2; R. Item No. 7. Because county residency was a prerequisite to employment with Employer, any false information about an applicant's place of residence was necessarily material to the qualifications for the position. *See Scott*, 474 A.2d at 427 (holding that the claimant's misrepresentation that he had a college degree in business administration, when he did not, was willful misconduct where the educational qualification was listed as one of the hiring criteria).

Claimant testified that when he applied for the job, he believed that he had six months to move to Delaware County and that Employer was "not going to harass [him] if [he was] not all the way in Delaware County . . . because [he had] a lot of things in flux" and the job description "d[id]n't say that [he] had to give a full disclosure of anything before [he] got there." N.T., 10/16/20, at 25-26. However, Ms. Cuthbert, who handled the paperwork for new hires, credibly testified that if Claimant had disclosed that he lived outside of Delaware County when he applied for the position, Employer "would've had [Claimant] sign an affidavit stating he would move [to Delaware County] within six months," but Employer did not offer

12

him that opportunity because he identified his place of residence as Boothwyn. *Id.* at 11, 20, 31; *see also id.* at 5 (Ms. Cuthbert testified that Claimant "filled all his paperwork out with the address on record of 1850 Larkin Road, Boothwyn, PA"); *id.* at 11-12 (Ms. Cuthbert testified that Claimant identified his place of residence as Boothwyn on his job application and "on all his . . . paperwork for his application").

We conclude that Employer established that county residency was material to the qualifications for the Budget Director position. The fact that Employer would offer a non-county resident an opportunity to move to Delaware County if he or she were hired is irrelevant, because Claimant stated in his application that he lived in Boothwyn and, as such, was already a Delaware County resident. Moreover, Claimant's representation in his application that he resided in Boothwyn might have encouraged Employer to hire Claimant over other qualified candidates for the position. *See, e.g.*, *Sill-Hopkins*, 563 A.2d at 1290-91 (finding that the claimant's failure to disclose that she was denied registration to sell securities in Michigan was material, even though the job requirements did not include selling securities in Michigan, in part because her omission may have encouraged the employer to hire her over other applicants and such an omission was "clearly inconsistent with her position of trust").

Finally, Claimant asserts that the Board's decision is unsupported by substantial, competent evidence. Claimant contends that Employer's basis for discharging him was factually inaccurate, because Employer determined that he lived in Wilmington when he applied for the job, but the Board found that he lived in Philadelphia. Claimant's Br. at 30. According to Claimant, the Board exceeded the scope of its authority when it found an alternate basis to support Employer's discharge of Claimant. *Id.* We disagree.

13

Our Court has stated that "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the fact[]finder; *the critical inquiry is whether there is evidence to support the findings actually made*." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (emphasis added). "Where substantial evidence supports the Board's findings, they are conclusive on appeal." *Id.*

Although Employer determined that Claimant lived in Wilmington, the record contains sufficient evidence, in the form of Claimant's own testimony, to support the Board's finding that Claimant lived in Philadelphia. Claimant testified that when he applied for the position, he was living in Philadelphia and was "moving out of [his] condo in Philadelphia and . . . was moving back to Delaware County." N.T., 10/16/20, at 24; *see also id.* at 25 (Claimant testified that when he was asked during his interviews if he was living in Philadelphia, he "said yeah, . . . I live there, I have a condo there, but . . . I'm moving back to Delaware County"); *id.* at 29 (Claimant testified that he stated to each of his interviewers: "I have a condo in Philadelphia, and that's where I live"). Regardless of whether Claimant lived in Wilmington or Philadelphia, neither of those cities is located in Delaware County. As the Board properly determined: "[E]ven if [E]mployer was incorrect in its conclusion that [C]laimant was living in Wilmington, Delaware, [E]mployer's material conclusions, i.e.[,] *that [C]laimant misrepresented his place of residence in his application, holds true; [C]laimant did not reside in Delaware County when he asserted that he did*." Ref.'s Order, 10/26/20, at 3 (emphasis added); Bd.'s Order, 3/12/21, at 1. While Claimant testified that he was "in the process" of moving into his grandmother's home in Boothwyn and slept there "on a regular basis," N.T., 10/16/20, at 24-25, 32, the Board discredited that testimony. Ref.'s Order, 10/26/20, at 2; Bd.'s Order,

3/12/21, at 1. Therefore, we agree with the Board that "[s]ince [E]mployer discharged [C]laimant for providing false information in his application for employment, *[he] is still liable for providing false information even if his actual residence [was] in Philadelphia rather tha[n] Wilmington*." Ref.'s Order, 10/26/20, at 3 (emphasis added); Bd.'s Order, 3/12/21, at 1.

## Conclusion

We conclude that the record contains substantial evidence to support the Board's determination that Claimant committed disqualifying willful misconduct under Section 402(e) of the Law by falsifying his place of residence in his application materials. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

Judges Fizzano Cannon and Dumas did not participate in the decision of this case.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffry Schott,       :
     Petitioner   :
            :
  v.         : No. 778 C.D. 2021
            :
Unemployment Compensation  :
Board of Review,      :
     Respondent  :

# **O R D E R**

AND NOW, this 17th day of November, 2022, the Order of the Unemployment Compensation Board of Review, dated March 12, 2021, is hereby AFFIRMED.

           _____

           ELLEN CEISLER, Judge